GIBBONS, Circuit Judge.
Mei Zhu Huang, a native and citizen of China, seeks review of an order of the Board of Immigration Appeals (BIA) rejecting several requests for relief. For the following reasons, we deny the petition for review.
I.
Huang testified that she was born on September 15,1976, in Changle City, Fuji-an Province, China, where she lived until 2008. In late 2006, Huang found out she was pregnant. Huang was thirty years old and single. She testified that she knew it was illegal for unmarried women to have children in China; so she and her boyfriend went to register for a marriage license on January 17, 2007. According to Huang, she was nervous during the registration interview, which attracted suspi *589 cion. The registration official told Huang that she would have to submit to a premarital examination before she could register to marry.
Huang testified that she tried to leave, but the registration official threatened to call security. Four family planning officials showed up and forcibly escorted Huang to a clinic. Huang claimed that one of the officials hit her boyfriend and knocked him onto the floor. After the examination, the family planning officials immediately took Huang into a surgical room for a forced abortion. Huang recounted that the officials bound her to a table and “took a cold operator and stuck into ... [her] lower body.” Huang struggled, but the doctors continued. According to Huang, her parents came to pick her up twenty minutes after the procedure. She was fined 3,000 Renminbi, which she did not pay.
Almost two years later, Huang decided to leave China. Huang arrived in Texas on November 12, 2008. She then traveled to New York to meet a friend, and she later met up with her boyfriend. Eight months after arriving, Huang filed an application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). Even though she was still dating her boyfriend at the time, she did not include a letter or statement from him in her application.
After listening to Huang’s testimony, an Immigration Law Judge (IJ) denied Huang’s application because she did not find Huang credible. The IJ first noted that Huang’s testimony was “lacking in detail.” She did not provide testimony about the specifics of the procedure or how it felt. And she did not explain how her parents knew she was at the clinic. The IJ also found the lack of information about and from Huang’s boyfriend troubling. The IJ pointed out that Huang did not call her boyfriend when she arrived in the United States and that he did not come meet her in New York. Because Huang’s boyfriend was her main corroborating witness, the IJ found the absence of a declaration from him “significant.” Finally, the IJ expressed concern with Huang’s testimony about why she quit her job in China. The IJ found it more likely that Huang was planning to leave China and quit her job to be ready, rather than to rest from a procedure that occurred much earlier. Finding Huang’s corroborating evidence similarly unreliable, the IJ held that Huang failed to meet her respective burdens.
Huang appealed to the BIA, challenging the IJ’s denial of her application for asylum and withholding of removal. The BIA affirmed the IJ’s adverse credibility finding. The BIA also agreed that Huang failed to submit sufficient corroborating evidence. The BIA noted that the letter from Huang’s father deserved little weight because he was an interested witness who was not available for cross-examination. The BIA likewise discounted Huang’s medical records because they were unauthenticated photocopies that did not indicate whether her abortion was voluntary or mandatory.
II.
“Where the BIA reviews the immigration judge’s decision and issues a separate opinion, rather than summarily affirming the immigration judge’s decision, we review the BIA’s decision as the final agency determination.” Khalili v. Holder, 557 F.3d 429, 435 (6th Cir.2009). To the extent the BIA adopted the IJ’s reasoning in its opinion, we also review the IJ’s decision. Id. We review the IJ’s and the BIA’s credibility findings under the substantial-evidence standard. Id. Under this standard, findings of fact by the BIA and *590 the IJ “are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.” 8 U.S.C. § 1252(b)(4)(B); see Yu v, Ashcroft, 364 F.3d 700, 702-03 (6th Cir.2004). “Facts relevant to credibility determinations, denial of asylum applications, withholding of removal, and the CAT are all reviewed under this same standard.” Koulibaly v. Mukasey, 541 F.3d 613, 619 (6th Cir.2008).
III.
The BIA adopted the IJ’s adverse credibility determination. Huang argues that this determination is not supported by substantial evidence. Because Huang filed her application after May 11, 2005, we look to the standards set forth in the REAL ID Act of 2005. See Hua Tu Lin v. Holder, 412 Fed.Appx. 848, 853 (6th Cir.2011). Under the Act, triers of fact should consider the “totality of the circumstances” and take into account “all relevant factors” when making credibility determinations. 8 U.S.C. § 1158(b)(1)(B)(iii). The factors include:
the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant’s or witness’s account, the consistency between the applicant’s or witness’s written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant’s claim, or any other relevant factor.
Id. This is a difficult standard to overcome, and Huang cannot do so.
The IJ based her credibility determination in part on Huang’s vague testimony about the forced abortion procedure. We have allowed similar inquiries under the REAL ID Act. Hua Tu Lin, 412 Fed.Appx. at 853. “[Gjreater specificity in one’s testimony corresponds to greater candor and responsiveness, in addition to being permitted for consideration under the ‘any other relevant factor’ catch-all.” Id. (quoting § 1158(b)(1)(B)(iii)). The IJ noted that Huang did not provide specific details about the actual abortion proce dure, even though she claimed she was forced to undergo the procedure without anesthesia. This finding is supported by the record. Huang repeatedly stated that she resisted the procedure and screamed for the doctors to stop; but her testimony about the procedure itself never became more specific than a general reference to a cold object. Huang did not, for example, describe the various steps of the procedure, estimate how long the procedure took, or really explain how the procedure felt. In addition, Huang never explained how her parents learned about the procedure, which she said happened immediately after the forced examination, or how they were able to come to the hospital so quickly.
Huang also relies on State Department reports in the administrative record to bolster her credibility. She overstates their contents. The 2007 report states that in 2003 China repealed its national requirement for premarital medical examinations. Huang’s home province of Fujian, it is true, continues to require “unspecified ‘remedial measures’ ” for unplanned pregnancies, but it is not one of seven provinces listed that require forced abortions. The report states that “Consulate General officials visiting Fujian ... did not find any *591 cases of physical force employed in connection with abortion or sterilization.... [They] have found that many violators of the one-child policy paid fines but found no evidence of forced abortion....” Indeed, physicians in Fujian who consult with American officials have reported no signs of forced abortions since the 1980s.
Although we agree with the dissent that Huang’s testimony may support a different conclusion, we disagree that her testimony compels it. See Klawitter v. INS, 970 F.2d 149, 152 (6th Cir.1992). We recognize, however, that credibility determinations based solely on a lack of details are difficult to review. An applicant or a witness can always go into more detail and can rarely anticipate which set of details the fact-finder desires. In this case, though, the IJ found Huang incredible for additional reasons. Under the REAL ID Act, these deficiencies are relevant to the IJ’s credibility determinations, even though they do not concern the forced abortion. See Slyusar v. Holder, 740 F.3d 1068, 1072-73 (6th Cir.2014) (citing § 1158(b)(1)(B)(m)).
First, the IJ found the absence of information about Huang’s boyfriend troubling. As discussed by the IJ, Huang’s testimony about her boyfriend was hazy, at best. See Hua Tu Lin, 412 Fed.Appx. at 853 (upholding an IJ’s adverse credibility determination because the applicant’s testimony was “general” and “opaque”). Huang glossed over her second attempt to register for a marriage license, her boyfriend’s decision to leave China, her decision to follow, their ultimate breakup, and everything in-between. As the IJ noted, these deficiencies are important because Huang’s relationship was the backdrop of her story — from her forced abortion to her decision to come to the United States. Without any particulars, the IJ could not “verify any of the events that [Huang] generally claimed happened to her.” And, significantly, the IJ placed the most emphasis on Huang’s failure to obtain a declaration from her boyfriend. As the IJ noted, Huang “knew enough to obtain documents from her doctor and to either bring them or send them to corroborate her claim but does not list her boyfriend as a witness or get a declaration from him although she says he was present and a witness to the events, including when she was forcibly taken for the abortion.” The dissent agrees that Huang’s failure to obtain a declaration is significant, yet it still would hold that the IJ’s adverse credibility decision was unreasonable because the IJ ignored Huang’s explanations for her testimony. But the IJ acknowledged the favorable facts mentioned by the dissent and weighed them accordingly. That we may weigh them differently does not mean that the record compels a different result.
The IJ also determined that parts of Huang’s story were implausible. For example, the IJ doubted Huang’s testimony that she quit work in September 2008 for medical reasons. In support of its finding, the IJ remarked that it was unlikely that Huang was experiencing complications from a January 2007 procedure.[1] The dissent points out that Huang did not directly testify that she quit work because of complications from an abortion procedure, but rather because of an irregular menstrual cycle. But this was not necessarily an error on the IJ’s part. In discussing the procedure, Huang testified that she had an infection in her uterus that lasted two *592 years after the procedure. From this testimony, it is easy to infer that the menstrual cycle problems were related to this infection and therefore also related to the procedure. Regardless, the IJ found Huang’s testimony that she quit her job for medical reasons implausible because of the close timing to Huang’s trip to the United States. The IJ thought it much more plausible that Huang quit her job so she could wait for the snakehead to contact her with travel plans. As the IJ acknowledged, the reason Huang quit her job was not a problem; rather, the problem is that Huang was not entirely honest. Because the IJ doubted Huang’s story on this issue, the IJ had more reason to doubt Huang’s testimony about the more important parts of her story. See Slyusar, 740 F.3d at 1072-73 (citing § 1158(b)(1)(B)(iii)). Huang does not offer any evidence showing that a reasonable adjudicator would be compelled to decide the case differently. See 8 U.S.C. § 1252(b)(4)(B).
Huang argues that she should still prevail because the IJ failed to point but these problems with Huang’s testimony and ask Huang to elaborate. We disagree. While an IJ has a general duty to ensure that the record is fully developed, see Abdura-khmanov v. Holder, 735 F.3d 341 n. 4 (6th Cir.2012), an IJ does not function as an applicant’s advocate. Huang ultimately bore the burden of proof under her application for asylum, 8 C.F.R. § 1208.13, and withholding of removal, id. § 208.16(b). See Zoarab v. Mukasey, 524 F.3d 777, 783 (6th Cir.2008) (noting that an applicant bears a higher burden to prove withholding of removal). Significantly, Huang was represented by counsel. See El Harake v. Gonzales, 210 Fed.Appx. 482, 487 n. 8 (6th Cir.2006) (distinguishing an IJ’s obligation to develop the record in a case involving a pro se applicant from one involving a represented applicant). The IJ did not prevent Huang from testifying or presenting evidence. In fact, the IJ asked Huang clarifying questions throughout the hearing. There was no error.
IV.
Huang challenges the BIA’s determination that her corroborating evidence was weak. As an initial matter, we find no problem with the BIA’s (and the IJ’s) requirement that Huang produce corroborating information about the forced abortion procedure. See 8 U.S.C. § 1158(b)(1)(B)(ii); Yan Chen v. Holder, 423 Fed.Appx. 557, 561 (6th Cir.2011) (“Because the immigration judge found that [the applicant] was not credible, he could have properly determined that [the applicant] was obligated to provide objective corroboration of her claims.”).
We also find no error with the BIA’s and IJ’s conclusion that Huang failed to provide sufficient corroborative evidence. Although Huang provided a letter from her father, his version of the events did not quite match up with hers. Moreover, the BIA and the IJ may give his testimony less weight because he was an interested witness. See Mohamed v. Holder, 542 Fed.Appx. 446, 450 (6th Cir.2013); Qiao Zhen Jiang v. Holder, 341 Fed.Appx. 126, 128 (6th Cir.2009). Additionally, the BIA and IJ correctly noted that Huang’s medical records deserved limited weight because they were unauthenticated photocopies and because the translated version inaccurately combined the records into one document, as if they all were written on official letterhead. See Ramaj v. Gonzales, 466 F.3d 520, 530 (6th Cir.2006) (holding that deficiencies in translation justify the exclusion of documents). And, even if given full weight, a generous reading of the documents only shows that Huang had an abortion — not that the abortion was forced. We disagree *593 with the dissent that this distinction “is of no consequence.” The IJ found Huang incredible on her testimony that she was forced to have an abortion, and the documents cannot corroborate this fact.
In light of this weak evidence, the BIA and the IJ were right to question Huang’s failure to produce testimony — live or written — from her former boyfriend. Huang’s boyfriend was with Huang when she registered to marry and when she was forced to submit to the premarital examination that ended in a forced abortion. They were still together when she filed her applications. Huang’s only explanation for not including testimony from her boyfriend was that “he did not think of it at the time.” This explanation is not enough. See Dorosh v. Ashcroft, 398 F.3d 879, 383 (6th Cir.2004).
Y.
For the above reasons, we deny Huang’s petition for review.

. The IJ’s decision incorrectly miscalculates the time between January 2007 and September 2008. The IJ’s decision says that Huang’s abortion procedure occurred more than nine months before she quit her job. In fact, according to Huang's testimony, the procedure occurred a year and nine months earlier.