**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4208
_____

ABRAHAM CARRILLO RAMIREZ,
a/k/a Abraham Ramirez, a/k/a Abraham Carillo,
Petitioner

v.

ATTORNEY GENERAL UNITED
STATES OF AMERICA,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A205-309-488)
Immigration Judge:  Honorable Dorothy Harbeck

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 20, 2015

Before: AMBRO, VANASKIE and SLOVITER, Circuit Judges

(Opinion filed: March 24, 2015)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Abraham Carillo Ramirez petitions for review of a final order of removal. For the following reasons, we will deny the petition.

Ramirez, a native and citizen of Colombia, entered the United States in 2007 and overstayed his visa. The Government started removal proceedings on that basis in 2012. See 8 U.S.C. § 1227(a)(1)(B). Ramirez, who was represented by counsel at the immigration hearing, conceded removability. He also applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") based on his fear of being killed or tortured by a drug cartel, the South Cartel, or a paramilitary group, the Autodefensas Unidas de Colombia ("AUC").

Ramirez testified about four encounters with the South Cartel, starting with a meeting in which he was accused of being an informant for another cartel and asked to prove his innocence by working for the South Cartel. He refused and was told "okay, you have made your decision," which he construed as a threat. About a month later, Ramirez visited his aunt in another city. Upon arrival, she told him to leave because armed men had come to her house looking for him. Ramirez' last encounter occurred a year later, while visiting his mother. He passed a lot controlled by the cartel while walking to her house. The man who originally accused him of being an informant accosted him at gunpoint, asking him why he was there. Ramirez said he was not an informant and was only visiting his mother. The man then shoved Ramirez and told him he would keep an eye on him.

2

As for the AUC, Ramirez received phone calls in 2006 telling him to join the group. He testified that such recruitment was a common practice in his town. By the second call, Ramirez was scared and moved to his father's house in another city for a few days. In the third call, he was told to report within twenty-four hours or be killed. Ramirez fled again to his father's house for several weeks. When he went to visit his mother, two AUC members tried to kidnap him and his companion. The young men fought off their attackers, who shot at them and drove away. Ramirez' mother then drove him to another part of the country to stay with a relative. He remained there for the rest of 2006, but the AUC called his mother's house while he was away. Finally, Ramirez testified that while he was travelling by bus to school in early 2007, an unidentified man followed him and shot at him.[1] Ramirez sought refuge at his father's house until he left for the United States in May 2007.

The Immigration Judge ("IJ") found Ramirez' testimony credible, but denied relief. She concluded that: (1) his asylum application was time-barred;[2] (2) he had not suffered harm rising to the level of past persecution on account of a protected ground; and (3) he had not shown he faced a likelihood of torture by, or with the acquiescence of, the Colombian government. In pertinent part, the IJ found that the threats and

---

[1] The Immigration Judge found that Ramirez could not link this incident to either the cartel or the AUC.

[2] Ramirez filed his application years after the deadline expired. He has raised no constitutional or legal questions regarding the IJ's conclusion that he does not qualify for an exception to the deadline, so the matter is beyond judicial review. See 8 U.S.C.

intimidation Ramirez experienced, though unfortunate, did not rise to the level of persecution. As for his CAT claim, the IJ concluded that Ramirez had not shown that he had been tortured in the past and found the country conditions evidence he submitted to be too generalized to establish that it is more likely than not that he would be tortured if he returned to Colombia. The Board of Immigration Appeals ("BIA") upheld the IJ's decision, and this petition for review followed.

As an initial matter, the Government urges us to "clarify" whether we have jurisdiction over the petition for review in light of the BIA's sua sponte reconsideration of its initial decision. While Ramirez' appeal was pending before the BIA, he filed a motion to reopen which presented additional articles in support of his claims for relief. The BIA did not mention this motion in its September 2013 decision dismissing the appeal. In December 2013 – after Ramirez petitioned this Court for review of the September decision – the BIA sua sponte reconsidered its earlier decision. The Board noted that it had previously failed to address the motion to reopen, construed it as a motion to remand, and denied it, concluding that the additional documents did not establish a prima facie case for relief. The BIA stated in its order that "[t]he appeal is dismissed for the reasons stated in our September 26, 2013, decision." Resp't's Br. at Ex. A. The Government argues that it is not clear whether the BIA's December 2013 decision "altered the status of [its earlier] decision as a final order of removal" because the BIA did not explicitly state whether it was affirming or modifying its earlier decision.

§ 1158(a)(3); Sukwanputra v. Gonzales, 434 F.3d 627, 633, 635 (3d Cir. 2006).

Id. at 15.  The Government contends that we would lack an order to review if the December decision "effectively vacated" the earlier decision because Ramirez did not petition for review of the BIA's December decision.

We do not perceive the situation to be as murky as the Government does.  As we have previously noted, the substance of the BIA's decision upon reconsideration may affect whether there is still a live controversy to be resolved:

> For example, if the BIA's subsequent decision substantively altered the *ratio decidendi* in its earlier disposition and operated to vacate the BIA's earlier decision, then the petition for review of the earlier decision is without effect because there is no longer any order or decision for the court of appeals to review.  On the other hand, if the BIA's subsequent decision did not materially alter the rationale of the earlier ruling, that ruling remains effective and subject to judicial review by the court of appeals.

Thomas v. Att'y Gen., 625 F.3d 134, 140 (3d Cir. 2010).  In this case, the BIA's decision upon reconsideration did not materially alter the rationale of its earlier ruling.  The December decision makes clear that the BIA undertook sua sponte reconsideration for the purpose of addressing the previously overlooked motion to remand, and the analysis in the decision pertains only to that motion to remand, which was denied.  Significantly, the BIA's decision did not state that it was modifying, reversing, or vacating the earlier decision.  On the contrary, the BIA explicitly adhered to its prior disposition and rationale, stating that "[t]he appeal is dismissed for the reasons stated in our September 26, 2013, decision."  In this context, we conclude that the December 2013 decision did

5

not vacate or substantially modify the September 2013 decision and, therefore, the petition for review continues to present a live controversy for judicial review.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). Where, as here, the BIA issues its own decision on the merits, we review that decision and consider the IJ's ruling "only insofar as the BIA deferred to it." Roye v. Att'y Gen., 693 F.3d 333, 339 (3d Cir. 2012). We review the agency's factual findings for substantial evidence. Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir. 2003). This is a deferential standard, and the "BIA's determination will not be disturbed unless any reasonable adjudicator would be compelled to conclude to the contrary." Yu v. Att'y Gen., 513 F.3d 346, 348 (3d Cir. 2008) (internal quotation marks omitted).

In this case, Ramirez challenges the denial of withholding of removal and CAT relief. The Government argues that we lack jurisdiction to review the denial of withholding of removal because Ramirez failed to raise any arguments relevant to that issue when he appealed to the BIA. See Lin v. Att'y Gen., 543 F.3d 114, 120-21 (3d Cir. 2008) (holding that the failure to exhaust an issue before the BIA deprives this Court of jurisdiction to review it). Although Ramirez failed to specifically challenge the IJ's ruling, we nonetheless retain jurisdiction to consider it because the BIA sua sponte reviewed the IJ's ruling.[3] Id. at 126.

---

[3] We note that the BIA's decision could lead to some confusion on this point. The Board first stated that "we agree with the [IJ] that [Ramirez] did not meet his burden of proving that he faces a clear probability of persecution if removed to Colombia or that any harm he suffered was on account of a statutorily enumerated ground." Administrative Record

To establish entitlement to withholding of removal, Ramirez had to show that it is more likely than not that he will be persecuted in Colombia on account of a protected ground. See Zubeda v. Ashcroft, 333 F.3d 463, 469-70 (3d Cir. 2003). Past persecution triggers a presumption that a petitioner will be persecuted after removal. 8 C.F.R. § 1208.16(b)(1)(i). The IJ determined that the intimidation Ramirez experienced did not rise to the level of persecution because the threats remained unfulfilled and Ramirez never suffered serious harm. Substantial evidence supports this conclusion. Persecution "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). Rather, it is defined as extreme behavior, such as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a real threat to life or freedom." Lukwago v. Ashcroft, 329 F.3d 157, 168 (3d Cir. 2003). In this case, Ramirez experienced sporadic threats and an attempted kidnapping, in which he was shot at but remained unharmed. Although undoubtedly frightening to Ramirez, these incidents do not rise to the level of persecution. See Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005) ("isolated incidents that do not result in serious injury do not rise to the level of persecution.")

Ramirez notes that he was hit in the head during the attempted kidnapping and

---

("A.R.") at 2. However, the BIA later stated that Ramirez had not challenged the IJ's decision and supported its conclusion that he had not demonstrated error by citing precedent wherein the Board refused to address issues not raised on appeal. Id. Nevertheless, we find the Board's initial and plain statement regarding its agreement with

argues that the event constituted persecution under <u>Chavarria v. Gonzales</u>, 446 F.3d 508 (3d Cir. 2006). In <u>Chavarria</u>, the petitioner was forced at gun and knife point into a car, robbed, and threatened with death because he was a witness to a politically-motivated crime. <u>Id.</u> at 519-20. While both cases involved forcing a victim into a car at gunpoint, the similarities end there. The attempt on Ramirez was unsuccessful because he was able to escape, and he did not suffer harm from it: he testified that the blow to his head was not serious and he did not seek medical help. <u>See</u> A.R. at 540-41; <u>Chen v. Ashcroft</u>, 381 F.3d 221, 235 (3d Cir. 2004) (beatings that did not result in serious injury and for which petitioner did not seek medical help did not rise to the level of persecution). Most importantly, Chavarria established that he was attacked on account of a protected ground, whereas Ramirez failed to make that showing, which we will discuss next.

In addition to establishing persecution, Ramirez also had to show that he was targeted by the South Cartel and AUC on account of a protected ground. <u>See</u> <u>Zubeda</u>, 333 F.3d at 470. Ramirez checked the box for "membership in a particular social group" on his asylum application, but never identified the social group in his application, supporting statement, or testimony. He therefore failed to carry his burden on that ground because he did not identify a particular social group, establish his membership in that group, or show persecution on account of membership. <u>See</u> <u>Lukwago</u>, 329 F.3d at 170.[4] The IJ considered whether the protected ground of political opinion might be at

the IJ's conclusions to reflect sua sponte review of the denial of withholding of removal.
[4] Ramirez argues in his brief that he belongs to the particular social groups of (1) young

8

issue but concluded that it was not, relying on <u>INS v. Elias-Zacarias</u>, 502 U.S. 478, 482 (1992), for the point that resistance to guerilla recruitment is not inherently an expression of political opinion. Review of the record supports the IJ's conclusion that this case is similar to <u>Elias-Zacarias</u> because Ramirez presented no evidence that he was targeted by, or resisted, the AUC and South Cartel on account of an expressed political opinion, or one that was imputed to him. Furthermore, Ramirez testified that he was targeted by the South Cartel because they thought he was working for another cartel. A.R. at 510.

In sum, Ramirez failed to establish past persecution on account of a protected ground, and was therefore not entitled to a presumption of future persecution. He likewise failed to independently show a likelihood of future persecution. He never established a protected ground, as explained above, and the numerous articles and reports he submitted about conditions in Colombia were too generalized to support his claims. At most, he showed criminal activity and "generalized lawlessness and violence," which does not amount to persecution on account of a protected ground. <u>See</u> <u>Abdille v. Ashcroft</u>, 242 F.3d 477, 494-95 (3d Cir. 2001). We therefore conclude that substantial evidence supports the denial of withholding of removal.

Turning to Ramirez' claim for CAT relief, he had to show by objective evidence

---

men who have resisted recruitment by gangs or paramilitary organizations, and (2) Colombians who hold visas and have traveled to the United States. He did not make these claims during the immigration proceedings or on appeal to the BIA; therefore they are not exhausted and the BIA cannot be deemed to have considered them during its sua sponte review of the IJ's ruling regarding withholding of removal. Accordingly, we lack jurisdiction to review the argument. <u>See</u> <u>Lin</u>, 543 F.3d at 120-21.

that it is more likely than not that he will be tortured in Colombia.  See Kamara v. Att'y Gen., 420 F.3d 202, 212-13 (3d Cir. 2005).  The IJ determined that Ramirez had not been tortured in the past and concluded that he suffered only "unpleasant and fear-inducing" experiences that did not rise to the level of severe physical or mental suffering. Substantial evidence supports this conclusion, as Ramirez experienced only sporadic episodes of threats and intimidation, whereas torture is, by definition, an extreme form of cruelty.  See Zubeda, 333 F.3d at 472.  Although the fear Ramirez felt from being threatened at gunpoint and shot at caused him to move around Colombia and ultimately flee to the U.S., his evidence did not show the type of "prolonged mental harm" resulting from the threat of imminent death that would constitute torture.  See 8 C.F.R. § 208.18(a)(4)(iii).  The IJ also rejected Ramirez' country conditions evidence as too generalized, a characterization that is supported by the record.[5]  Ramirez claimed to fear being tortured and killed by the South Cartel or the AUC.  However, he failed to present country conditions evidence explicitly mentioning the South Cartel, or evidence indicating that the AUC is currently active in the region of Colombia he hails from.

Ramirez directs our attention to reports filed by his family regarding recent threats from the South Cartel and AUC.  One document was apparently submitted to the BIA in

---

[5] We note that the IJ incorrectly stated the law regarding country conditions evidence when she wrote that "[r]elevant country conditions alone are insufficient to obtain relief under the CAT."  A.R. at 402.  We have held the opposite.  See Pieschacon-Villegas v. Att'y Gen., 671 F.3d 303, 313 (3d Cir. 2011).  This error does not affect our analysis, however, because Ramirez' testimony and other evidence were insufficient to support his claim for CAT relief.

10

support of the motion to remand, and the other was submitted to this Court with his brief. The latter document is not part of the administrative record and we thus may not consider it. See 8 U.S.C. § 1252(b)(4)(A). The former document is beyond the scope of review in this case because Ramirez' petition pertains only to the BIA's initial decision on appeal, not to its decision regarding the motion to remand. Ramirez has not otherwise persuasively argued that his testimony and other evidence of record established that it is more likely than not that he will be tortured by the South Cartel or AUC if he returns to Colombia. Therefore, we conclude that substantial evidence supports the denial of CAT relief.

For these reasons, we will deny the petition for review.