NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0398n.06

No. 16-4214

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 07, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| VERONICA MARCELA HELENA VIUDA DE MEJIA, et al., | ) ) ) | |
| Petitioners, | ) ) | ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS |
| v. | ) ) | |
| JEFFERSON B. SESSIONS, III, U.S. Attorney General, | ) ) ) | |
| Respondent. | ) ) ) | |

Before: SUTTON, McKEAGUE, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. When Veronica Marcela Helena Viuda de Mejia crossed into the United States with her daughter, the pair lacked the lawful status needed to stay. So Viuda de Mejia applied for asylum. But an immigration judge ("IJ") determined that she did not qualify as a refugee, and the Board of Immigration Appeals ("BIA") agreed. Viuda de Mejia now petitions this court for review. Because her claims are either unexhausted or waived, we deny the petition.

I.

For twenty-seven years, Viuda de Mejia called El Salvador home. In 2015, she decided it was time to leave. The final straw came courtesy of her sister's ex-paramour: Viuda de Mejia told Pedro Velasco to leave her sister Esmerelda alone, and he expressed his displeasure gun-in-hand. Frightened, Viuda de Mejia packed her bags and took her daughter to the United States.

When she arrived, the Department of Homeland Security ("DHS") charged her and her daughter with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i). At a later hearing, Viuda de

Mejia admitted DHS's allegations and conceded inadmissibility. But the IJ adjourned the hearing so that Viuda de Mejia could apply for asylum. When the IJ reconvened, Viuda de Mejia testified that Pedro's threat was not the first she had faced. As a teen, she said, an MS-13 gang member tried to rape her. She escaped, but his gang continued to harass her. They let up once she married, but her husband died in an accident three years later. She rebounded and opened a small store with an insurance payout. But that lasted only a few years before two men assaulted her—demanding that she pay them "rent" and become "their woman." She closed up shop and found work at another store. But it was not long before her new boss sexually assaulted her at gun point.

Tragic as her story was, the IJ saw several problems with it. The IJ found her testimony inconsistent and thus not credible: Her asylum application never mentioned an attempted rape by an MS-13 member; she misidentified the dates of one assault and another threat; and it was unclear whether and how often she had confronted Pedro. And setting all that aside, the IJ said, she never established that she was persecuted because of her membership in a recognized social group.

When the IJ denied her application, Viuda de Mejia appealed to the BIA. She accused the IJ of missing the forest for the trees—of latching onto minor details she omitted or misremembered while ignoring her "largely consistent narrative." A.R. 17. She argued, too, that the IJ erred in finding that she was not persecuted because of her membership in various groups. But where Viuda de Mejia saw error, the BIA saw none. It affirmed in a brief order directing her removal.

Viuda de Mejia now petitions this court for review. She argues that she has established that she was persecuted as a widow in El Salvador; again criticizes the IJ's credibility

assessment; and asserts that DHS violated her due-process rights.  Pet'r Br. 10-33.  She therefore asks us to vacate the BIA's removal order and to remand for additional fact finding.  *Id.* at 34.

II.

Because the BIA adopted the IJ's reasoning and explained its own, we review both orders.  *Abdulahad v. Holder*, 581 F.3d 290, 294 (6th Cir. 2009).  We may not disturb an IJ's factual findings, including credibility determinations, if they are supported by "substantial evidence."  *Slyusar v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014).  We review any legal issues de novo.  *Id.*; *Mikhailevitch v. I.N.S.*, 146 F.3d 384, 391 (6th Cir. 1998).

A.

Asylum is not easy to get.  The Attorney General has discretion to grant it—but only to "refugee[s]."  8 U.S.C. § 1158(b)(1)(A).  And not everyone who flees her homeland qualifies as a refugee.  Congress had a specific definition in mind:  "A refugee is an individual who is unable or unwilling to return to her home country 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'"  *Rreshpja v. Gonzales*, 420 F.3d 551, 554 (6th Cir. 2005) (quoting 8 U.S.C. § 1101(a)(42)(A)).  And it is the applicant who must prove that she meets this definition.  *Umana-Ramos v. Holder*, 724 F.3d 667, 671 (6th Cir. 2013); *see also* 8 U.S.C. § 1158(b)(1)(B)(i).

Viuda de Mejia's theory is that she was persecuted for being a member of one or more "particular social group[s]" in El Salvador.  *See* A.R. 115-16, 353.  Congress has not defined that phrase, but the courts have.  Members of a particular social group must share "a common, immutable characteristic."  *Rreshpja*, 420 F.3d at 555 (quoting *In re Acosta*, 19 I. & N. Dec. 211,

233 (BIA 1985)). That characteristic "must be one that the members . . . either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Id*. The group must also be "particular" and "socially distinct." *Zaldana Menijar v. Lynch*, 812 F.3d 491, 498 (6th Cir. 2015). A group is particular if it "can be described in terms sufficiently distinct such that the community would recognize it as a discrete class of persons." *Id*. And a group is "socially distinct" if society would view people with this shared characteristic as a group. *Id*.

Throughout this litigation, Vuida de Mejia has asserted membership in various social groups. She told the IJ that she was persecuted for being among the "[w]omen in El Salvador" and the "[y]oung widows in El Salvador who have rejected sexual relationships with MS-13 or other gang members," and for being the "[s]ister of Esmer[e]lda Helena, who has been in a marital relationship with an abusive husband who regards her as property." A.R. 116 (internal quotation marks omitted). She told the BIA that she was a member of two other groups, really subsets of the first: "unmarried/widowed women in El Salvador without a male protector in the home or . . . who work or own a business." *Id.* at 23. She tells us, more simply, that she was persecuted for being a widow in El Salvador. Pet'r Br. 29-31.

1.

We start with the group that Viuda de Mejia spends most of her time telling us about: widows in El Salvador. At least one other court has recognized widows in a particular country as a social group. *See Ngengwe v. Mukasey*, 543 F.3d 1029, 1034 (8th Cir. 2008). But the problem for Viuda de Mejia is that—in this case, at least—her theory is a new one. When the IJ asked, her lawyer argued that Viuda de Mejia belonged to three particular groups. "Widows in El Salvador" was not among them. Instead, counsel argued that men had targeted Viuda de

Mejia because she was a woman in El Salvador, a widow who had declined the sexual advances of a gang member, and/or the sister of a woman with an abusive husband. A.R. 65, 115-16. She added two subsets before the BIA. But again, neither were "widows in El Salvador" writ large; they were unmarried or widowed women who either lacked a "male protector" or worked. *Id.* at 23. Only when she reached this court did Viuda de Mejia drop all qualifiers and argue that she was persecuted simply for being a widow. *See* Pet'r Br. 30 ("[T]he BIA failed to consider adequately the proposed subsets of this group, such as widowed women in El Salvador."). Her proposed social groups have, in other words, expanded and contracted with each appeal as she searched for the right fit.

But novelty is not often rewarded on appeal. In administrative cases such as this, claims never brought before the agency have not been exhausted and are generally not ripe for our review. This holds true in immigration cases. The Immigration and Nationality Act ("INA") requires applicants to exhaust all available administrative remedies before seeking judicial review. 8 U.S.C. § 1252(d)(1). If an applicant fails to do so, a court will lack jurisdiction over her appeal. *Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004). And if she fails to exhaust only some of her claims, the court will consider only those she properly exhausted. *Id.* at 560. The law demands that a petitioner give the BIA a chance to develop a record and to consider her claims without judicial interference. *Id.* at 559. Viuda de Mejia never gave the agency that chance.

She responds that the IJ should have realized that "widows in El Salvador" was her particular social group all along. After all, in closing arguments before the IJ, her lawyer argued that Viuda de Mejia's former boss attacked her because she was a widow—which, her lawyer said, "would add a nexus to the social group I've outlined." Pet'r Reply Br. 7-8 (quoting A.R.

198). But the problem lies in that cross-reference. "Widows in El Salvador" was not among the groups Viuda de Mejia or her counsel "outlined" for the IJ. Those groups—and the modified ones she raised before the BIA—were either broader or narrower than the group she proposes here. And if Viuda de Mejia meant to reference "widows in El Salvador," then her lack of rebuttal is puzzling: In closing, counsel for DHS focused on the same three groups proposed at the start of the hearing. Yet Viuda de Mejia did not object; she had nothing to add. A.R. 199-200.

The IJ is neither diviner nor advocate. *See Mei Zhu Huang v. Holder*, 577 F. App'x 587, 592 (6th Cir. 2014). The IJ cannot graft on or shave off adjectives until the proposed groups are narrow enough to be particular, yet visible enough to be socially distinct. If Viuda de Mejia wished to argue that men persecuted her because she was a "widow in El Salvador," she had to raise that claim before the IJ and BIA. She did not. As a result, the agency never had the opportunity to consider it. And we lack jurisdiction to do so now. *Reyes-Cardona v. Holder*, 565 F. App'x 366, 368 (6th Cir. 2014) (holding the court lacked jurisdiction to consider a proposed social group that the applicant had not raised before the IJ or BIA); *accord Ferreira v. Lynch*, 629 F. App'x 4, 7 (1st Cir. 2015); *Ramirez v. Att'y Gen.*, 603 F. App'x 108, 112 n.4 (3d Cir. 2015).

2.

As for the groups Viuda de Mejia *did* raise before the BIA, the problem is not exhaustion but waiver. Of these, she now mentions only being the sister of Esmerelda Helena. She does so only in one sentence with two citations. Pet'r Br. 32. And all she argues is that small groups can exist—that "size is not reason alone for dismissing a group"—and that family can constitute a social group. *Id.* Yet she offers no proof that a single person can form a "group." *See* Webster's

Third New Int'l Dictionary 1004 (2002) (defining "group" as "a number of individuals bound together by a community of interest, purpose, or function"). Nor has she established that her sisterhood with Esmerelda is an immutable characteristic she shares with anyone. *See Umana-Ramos*, 724 F.3d at 671. Or that Salvadoran society would recognize the "sister of Esmerelda Helena" as a distinct social group. *See Zaldana Menijar*, 812 F.3d at 498. Her single-sentence argument is merely perfunctory. And "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Reg. Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)).

B.

In fairness, Viuda de Mejia devotes most of her attention not to social groups, but to the IJ's adverse-credibility determination. In fact, she says we need not even address her social-group claims. Because the IJ's finding that she lacked credibility itself lacked substantial evidence, she argues, the IJ's entire opinion was flawed.

But the BIA did not rely on the IJ's adverse-credibility determination when it rejected Viuda de Mejia's proposed social groups. It ruled in the alternative that, "even if we were to assume [her] credibility," Viuda de Mejia would still have failed to prove that she was persecuted because of her membership in a protected group. A.R. 4; *see also id.* at 65. This ruling, untainted by any error in assessing Viuda de Mejia's credibility, was an adequate and independent ground to deny her claim. And as discussed, Viuda de Mejia has brought no viable challenges to it. As a result, this challenge is not viable, either. *See Khozhaynova v. Holder*, 641 F.3d 187, 193-95 (6th Cir. 2011); *Daneshvar v. Ashcroft*, 355 F.3d 615, 622 (6th Cir. 2004).

C.

Viuda de Mejia appeals, finally, to the Constitution. Counsel for DHS, she argues, violated her due-process rights by misstating evidence while cross-examining her. And when the IJ failed to step in, she says she was left confused and unable to "testify with sufficient recollection and composure." Pet'r Br. 33.

This argument meets a familiar fate. Before the BIA, Viuda de Mejia argued that the IJ violated due process by adopting DHS's "cherry-picked inconsistencies" without critically analyzing them. A.R. 21. Now she focuses on DHS's questions (and the IJ's failure to control them). Those arguments are distinct, so once again exhaustion is a problem. *See* 8 U.S.C. § 1252(d); *Ramani*, 378 F.3d at 558-59. Indeed, although the BIA generally lacks authority to review due-process challenges, we still require applicants to raise process concerns before the BIA, which can then direct the IJ to fix what needs fixing on remand. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006). Where, as here, an applicant fails to raise such claims before the BIA, we have refused to address them on appeal. *See Gaye v. Lynch*, 788 F.3d 519, 527-28 (6th Cir. 2015); *Sedrakyan v. Gonzales*, 237 F. App'x 76, 79-80 (6th Cir. 2007). We decline again.

Exhaustion, though, is not the only problem. The Fifth Amendment guarantees Viuda de Mejia both "a full and fair hearing" and a neutral arbiter. *Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005). But Viuda de Mejia must show both an "error *and* substantial prejudice" before she can establish a due-process violation. *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005) (emphasis added). And neither the IJ's credibility assessment nor DHS's cross-examination "materially affected the outcome of [her] case." *Mapouya v. Gonzales*, 487 F.3d 396, 416 (6th Cir. 2007). That is because the BIA denied her application for a reason—failure to establish her

membership in a particular social group—that was not impacted by any misstatements, inconsistencies, or confusion in her testimony. *Cf. Cela v. Gonzales*, 205 F. App'x 376, 387 (6th Cir. 2006) ("Because the IJ denied asylum on an alternative ground that assumed credibility, Cela cannot show prejudice arising from any translation error that may have affected his credibility."). So even if it were before the court, Viuda de Mejia's due-process claim would fail on the merits.

III.

For the foregoing reasons, we **DENY** Viuda de Mejia's petition for review.