NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0464n.06

Case No. 20-4021

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 13, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| JAVIER TOLENTINO-HERNANDEZ, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW OF |
| | ) | A FINAL ORDER FROM THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| MERRICK B. GARLAND, Attorney General, | ) | |
| | ) | OPINION |
| Respondent. | ) | |
| | ) | |

Before: GILMAN, THAPAR, and NALBANDIAN, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge**. An immigration judge (IJ) denied Javier Tolentino-Hernandez's (Tolentino's) application for cancellation of removal on the basis that Tolentino failed to meet the statutory standard of "exceptional and extremely unusual hardship" to his United States children, a showing necessary to warrant cancellation of removal under 8 U.S.C. § 1229b(b)(1)(D). Tolentino appealed the IJ's decision to the Board of Immigration Appeals (BIA), which affirmed the decision and dismissed Tolentino's appeal. For the reasons set forth below, we conclude that the IJ and the BIA committed no error. We therefore DENY the petition for review.

## I. BACKGROUND

Tolentino is a Mexican citizen who unlawfully entered the United States in 2006. He is married to Olga Karina Mendoza, who is also a Mexican citizen unlawfully present in the United States. Tolentino and his wife have three children, each of whom is a United States citizen. At the time of Tolentino's hearing, which was held in October 2017, his children were six years old, five years old,

and six months old. Both Tolentino's wife and children intend to relocate to Mexico if Tolentino is removed.

During his hearing, Tolentino presented documentary and testimonial evidence in support of his contention that his children will suffer exceptional and extremely unusual hardship in the form of financial, educational, emotional, acculturational, and medical hardship if Tolentino is removed. Although acknowledging that Tolentino's children will face indisputable challenges, the IJ ultimately found that the hardships asserted did not rise to the level of being exceptional and extremely unusual. Tolentino timely appealed the IJ's decision to the BIA, which agreed that Tolentino had failed to meet the hardship standard. This timely petition for review followed.

## II. ANALYSIS

### A. Jurisdiction

The Immigration and Nationality Act (INA) allows us to review "constitutional claims or questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D). We do not have jurisdiction to review "discretionary or factual issues," *Singh v. Rosen*, 984 F.3d 1142, 1149 (6th Cir. 2021), but the Supreme Court has interpreted the phrase "questions of law" in § 1252(a)(2)(D) as extending to mixed questions of fact and law. *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1068–69 (2020). Because the BIA's exceptional-and-extremely-unusual-hardship determination is a mixed question of fact and law, we have jurisdiction to assess the merits of Tolentino's claims. *See Singh*, 984 F.3d at 1154 (holding that the BIA's hardship determination is a mixed question).

B.      **Standard of review**

When the BIA affirms an IJ's decision but adds its own comments, "we review both the IJ's decision and the [BIA's] additional remarks." *Skripkov v. Barr*, 966 F.3d 480, 486 (6th Cir. 2020) (quoting *Karimijanaki v. Holder*, 579 F.3d 710, 714 (6th Cir. 2009)). Section 1252(a)(2)(D) permits judicial review of hardship determinations, but the provision is silent as to the appropriate standard of review. *See Singh*, 984 F.3d at 1154 (discussing three possible standards: the clear-error standard, the substantial-evidence test, or the compelling-evidence test). In *Singh*, this court indicated that the "nature of this mixed question likely signals deference" to the BIA, but it refrained from selecting the proper standard. *Id*. This court instead concluded that "[n]o matter the standard, the [BIA] correctly held that [the applicant] failed to establish the required 'exceptional and extremely unusual hardship' to his family." *Id*. (quoting 8 U.S.C. § 1229b(b)(1)(D)). We likewise refrain from choosing the applicable standard of review because, no matter the standard applied, we conclude that Tolentino has not shown that exceptional and extremely unusual hardship to his children will result from his removal. *See Singh*, 984 F.3d at 1154; *Araujo-Padilla v. Garland*, 854 F. App'x 646, 649 (6th Cir. 2021) (abstaining from selecting the proper standard); *Ramirez-Garcia v. Garland*, No. 20-4005, --- F. App'x ---, 2021 WL 3017274, at * 1 (6th Cir. July 16, 2021) (same).

C.      **Exceptional and extremely unusual hardship under the INA**

Tolentino does not dispute the legal test that the IJ and the BIA applied in assessing hardship. Rather, he argues that the IJ and the BIA failed to adequately consider the full scope of the factors relevant to a cancellation-of-removal hardship analysis. Under §§ 1229b(b)(1)(A)–(D) of the INA, noncitizens subject to removal proceedings are eligible for cancellation of removal if they demonstrate that they (1) have been "physically present in the United States for at least

10 years," (2) have "been a person of good moral character," (3) have not "been convicted of a specified criminal offense," and (4) have "established that removal would result in exceptional and extremely unusual hardship" to their "spouse, parent, or child, who is a United States citizen or lawful permanent resident." *In re Gonzalez Recinas*, 23 I. & N. Dec. 467, 468 (B.I.A. 2002). The issue before us is whether the IJ and the BIA properly concluded that Tolentino failed to establish that his removal would result in exceptional and extremely unusual hardship to his children. We hold that they did not err in their analysis.

To establish exceptional and extremely unusual hardship, an applicant for cancellation of removal must provide "evidence of harm to his spouse, parent, or child *substantially* beyond that which ordinarily would be expected to result" from the noncitizen's removal. *Araujo-Padilla*, 854 F. App'x at 649 (emphasis in original) (quoting *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 59 (B.I.A. 2001)); 8 U.S.C. § 1229a(c)(4)(A) (placing the burden of proof on applicants for cancellation of removal). The reviewing tribunal must consider the individual and the aggregate effect of "the age, health, and circumstances of the qualifying family members, including how a lower standard of living or adverse country conditions . . . might affect those relatives." *In re Gonzalez Recinas*, 23 I. & N. Dec. at 468. A lower standard of living or adverse country conditions, however, "generally will be insufficient in themselves to support a finding of exceptional and extremely unusual hardship." *In re Monreal-Aguinaga*, 23 I. & N. Dec. at 63–64. If the qualifying relative is a child, a successful applicant might show, for example, that the child has "very serious health issues, or compelling special needs in school." *Id.* at 63.

Here, Tolentino argues that the IJ and the BIA erred because they failed to adequately consider and assess the cumulative weight of five alleged hardships: (1) deterioration of his

children's standard of living due to financial hardship; (2) lack of educational opportunities in Mexico; (3) mental, emotional, and cultural hardship resulting from relocation; (4) almost-certain medical hardship; and (5) the fact that Tolentino has no other lawful means of immigrating to the United States. He also argues that the IJ's and the BIA's failure to cumulatively weigh the unique circumstances of his case violated his Fifth Amendment right to a fundamentally fair hearing. We address Tolentino's arguments in turn below.

First, Tolentino contends that his children will experience financial hardship and a lower standard of living due to Tolentino's removal. The IJ and the BIA acknowledged that Tolentino and his family will face economic challenges that might affect the standard of living to which the children are accustomed. Both explained, however, that (1) financial hardship and "[g]eneral contentions concerning poor conditions in Mexico" are within the realm of hardships to be expected upon removal, and (2) the anticipated decline in Tolentino's earning power and financial status in Mexico —and its impact on his children's standard of living—are concerns mitigated by other circumstances in the record. For example, the IJ observed that Tolentino is young, healthy, and physically able to maintain employment in Mexico. The IJ also found that Tolentino's wife is capable of assisting "with the family's financial obligations." Tolentino further testified that he and his family could temporarily reside with his parents in Mexico while seeking employment.

We agree with the IJ's and the BIA's reasoning. Although the record establishes that the economic conditions and financial opportunities in Mexico are not equal to the opportunities that Tolentino has had in the United States—and that the children's standard of living will decline as a result—these circumstances do not rise to the level of exceptional and extremely unusual hardship. Financial hardship is within the realm of expected hardship, and other factors in the record mitigate the

financial concerns raised. *See Araujo-Padilla*, 854 F. App'x at 650–51 (agreeing with the BIA's finding that no exceptional and extremely unusual hardship existed where the noncitizen's family could work and financially contribute, thereby mitigating financial hardship).

Second, Tolentino argues that his children will have limited educational opportunities in Mexico. Based on the evidence presented, the IJ found that Tolentino's children did not have any compelling special needs in school, and the BIA likewise concluded that the children did not have any educational issues. Binding precedent provides that "diminished educational options alone do not establish the required hardship." *Singh v. Rosen*, 984 F.3d 1142, 1154–55 (6th Cir. 2021) (citing *In re Andazola-Rivas*, 23 I. & N. Dec. 319, 323 (B.I.A. 2002)). We agree that Tolentino has not established that his children will be "deprived of all schooling or of an opportunity to obtain any education." *See In re Andazola-Rivas*, 23 I. & N. Dec. at 323. Accordingly, the educational hardship identified in the record, considered on its own and in conjunction with other asserted hardships, does not meet the requisite hardship standard.

Tolentino next argues that his children will suffer mental and emotional hardship as well as cultural shock when relocating to Mexico. In weighing the unique circumstances of Tolentino's case, the IJ did not expressly address the children's level of Spanish proficiency, but he did find that these hardships were mitigated by the children's young ages. The IJ relied on *In re Pilch*, 21 I. & N. Dec. 627 (B.I.A. 1996), in which the BIA noted that adjusting to a new country is easier when the children are still very young. Here, the BIA observed that Tolentino's children "speak Spanish" and "have some relatives to help them adjust to life" in Mexico, factors that further offset any acculturational hardship.

We agree with the IJ's and the BIA's assessment of the record. Although challenging, the emotional, mental, and acculturational difficulties that Tolentino's children will face do not amount to experiences that "materially differ from those encountered by other children who relocate with their parents, especially at a young age." *See id.* at 632. Tolentino's case is also distinguishable from the BIA's decision in *In re Gonzalez Recinas*, 23 I. & N. Dec. 467 (B.I.A 2002), which Tolentino relies on as support for his position. Unlike the children in *In re Gonzalez Recinas*, Tolentino's children have family in Mexico as well as two parents who are capable of financially providing for them. The BIA in *In re Gonzalez Recinas*, in contrast, concluded that the "heavy financial and familial burden on the adult respondent, the lack of support from the children's father, the . . . children's unfamiliarity with the Spanish language, the lawful residence in this country of all of the respondent's immediate family, and the concomitant lack of family in Mexico combine[d] to render the hardship . . . well beyond that which is normally experienced in most cases of removal." *Id*. at 472. We therefore conclude that the IJ and the BIA did not err in determining that the emotional, mental, and acculturational hardships—whether considered individually or in the aggregate—were insufficient to meet the hardship standard.

Fourth, Tolentino argues that the IJ and the BIA failed to adequately consider that his children will face almost-certain medical hardship. He contends that the emotional hardship his children will likely experience will manifest itself as physical issues down the line in Mexico, where medical-care options are limited. On this record, however, the IJ found that Tolentino's children "are healthy with no medical problems" and observed that Tolentino failed to show that his children will suffer from an "extreme medical hardship." Supplementing the IJ's reasoning, the BIA addressed Tolentino's testimony about his youngest child's difficulties eating and maintaining weight during early infancy.

But Tolentino failed to present evidence that his son's past eating problem had been formally diagnosed or that it will reemerge. Tolentino also testified that his youngest son is currently in good health. These observations concerning the children's health are factual findings that we do not have jurisdiction to review. *See Singh*, 984 F.3d at 1149 (The INA bars this court "from reviewing discretionary or factual issues.").

According to BIA precedent, noncitizens who can show that their child suffers from a very serious medical issue might have a successful case for cancellation of removal. *See In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 63 (B.I.A. 2001). But the record here presents no such showing. The IJ considered the full evidentiary record and made a factual finding that the children are presently "healthy with no medical problems," which the BIA affirmed. Tolentino's speculative concerns regarding future medical hardships are not tethered to any current medical conditions ailing his children, and he does not cite to any BIA precedent supporting his argument. Because the record contained no evidence of current medical hardships that the IJ and the BIA could cumulatively weigh, Tolentino's argument that the IJ and the BIA failed to consider the totality of the evidence is without merit.

Fifth, Tolentino argues that the IJ failed to address the fact that Tolentino has no other lawful means of immigrating to the United States. Our review of the record, however, shows that Tolentino did not raise this issue before the IJ. Accordingly, we lack jurisdiction to review this alleged hardship. *See Viuda De Mejia v. Sessions*, 691 F. App'x 245, 248 (6th Cir. 2017) (explaining that if the petitioner did not raise an issue before the IJ and the BIA, "the agency never had the opportunity to consider it," and this court thus lacks jurisdiction to review the same). And even if Tolentino had timely raised the issue, the IJ's opinion states that the IJ "weighed all of the evidence

of record both individually and cumulatively on the issue of exceptional and extremely unusual hardship." Such language is sufficient for us to conclude that the IJ "has heard and thought and not merely reacted." *See Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir. 2003) (internal quotation marks omitted) (quoting *Osuchukwu v. INS*, 744 F.2d 1136, 1143 (5th Cir. 1984)). Moreover, Tolentino "cannot show that his lack of immigration options, either alone or in combination with his other arguments, amounts to 'exceptional and extremely unusual hardship' to any of his *qualifying relatives*," which is a showing necessary to warrant cancellation of removal. *See Araujo-Padilla v. Garland*, 854 F. App'x 646, 651 (6th Cir. 2021) (emphasis added) (quoting 8 U.S.C. § 1229b(b)(1)(D)).

Finally, Tolentino contends that the IJ and the BIA violated his Fifth Amendment right to due process by failing to consider the cumulative effect of hardship factors unique to his case. But this court has refused to "recast mere disagreement with the BIA's decision as a procedural due process violation." *Id.* at 652 (quoting *Lopez v. Att'y Gen. U.S.*, 757 F. App'x 163, 165 (3d Cir. 2018)). Tolentino's attempt to repackage his disagreement with the IJ's and the BIA's hardship determination as a constitutional claim thus lacks merit.

To summarize, a review of the record indicates that the IJ and the BIA applied the appropriate precedent, adequately considered the cumulative effect of the unique circumstances in Tolentino's case, and sufficiently responded to the arguments preserved for appeal. The IJ and the BIA did not err in determining that the hardships raised in the record—even when considered in the aggregate—failed to satisfy Tolentino's burden of showing exceptional and extremely unusual hardship.

### III. CONCLUSION

For all the reasons set forth above, we DENY Tolentino's petition for review.