**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2737
_____

MARIA C. SARANGO
AKA Maria Figueroa
AKA Maria Sarango-Narvaez
AKA Maria Torres

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent


Maria Sarango
aka Maria Figueroa,

Petitioner
_____

On Petition for Review of a Final Order
of the Board of Immigration Appeals
Immigration Judge: Honorable Annie S. Garcy
(No. A079-697-068)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 24, 2011

Before: BARRY, AMBRO, and VAN ANTWERPEN,
*Circuit Judges*

(Filed   June 30, 2011 )

Heidi J. Meyers, Esq.
Law Office of Heidi J. Meyers
233 Broadway, Suite 801
New York, NY 10279
         *Counsel for Petitioner*

Tony West, Esq.
John C. Cunningham, Esq.
Holly M. Smith, Esq.
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
         *Counsel for Respondent*
                _____

OPINION OF THE COURT
                _____

VAN ANTWERPEN, *Circuit Judge*.

Maria Sarango petitions for review of a Board of Immigration Appeals decision dismissing her appeal.   The BIA rejected Sarango's request for retroactive – "*nunc pro*

*tunc*" – consent to reapply for admission to the United States under 8 U.S.C. § 1182(a)(9)(C)(ii) because Congress delegated authority to consider such requests to the Secretary of Homeland Security, thereby depriving immigration judges of jurisdiction. Whether an immigration judge has jurisdiction to consider a § 1182(a)(9)(C)(ii) request for consent to reapply for admission is an issue of first impression. We conclude that an immigration judge lacks jurisdiction, and we will deny the petition.

**I.**

Sarango, a native and citizen of Ecuador, illegally entered the United States for the first time in June 1991. On December 14, 1994, the Immigration and Naturalization Service (now the Department of Homeland Security) commenced deportation proceedings. At the conclusion of these proceedings, an Immigration Judge ("IJ") granted Sarango voluntary departure on or before October 6, 1995. Nevertheless, Sarango remained in the United States for over three additional years before finally departing on February 25, 1999.

Just over a year after her departure, in August 2000, Sarango illegally reentered the United States without admission or inspection. Shortly after her reentry, Sarango married a United States citizen. Based on this marriage, Sarango applied – using a different alien registration number from her original registration number – for adjustment of status to lawful permanent resident ("LPR"). While her status adjustment application was pending, on August 27, 2001 Sarango filed an application for consent to reapply for admission to the United States using her original alien

3

registration number. On October 23, 2001, the INS conditionally granted Sarango LPR status for two years. On October 7, 2002, the INS denied Sarango's application for consent to reapply for admission. Sarango then sought to change her conditional LPR status to unconditional LPR status, and the INS granted her request on June 2, 2004.

On March 1, 2006, during a naturalization interview related to her status adjustment application, DHS discovered Sarango's previous deportation. DHS then initiated removal proceedings by serving Sarango with a Notice to Appear ("NTA"). The NTA charged Sarango with removability pursuant to 8 U.S.C. § 1227(a)(1)(A) alleging that she was an alien who is inadmissible: (1) under 8 U.S.C. § 1182(a)(6)(C)(i), for having obtained or tried to obtain her visa, or other entry document, or entry to the United States by fraud or willful misrepresentation; (2) under 8 U.S.C. § 1182(a)(7)(A)(i)(I), for not being in possession of a valid entry or identification document at the time of her admission; and (3) under 8 U.S.C. § 1182(a)(9)(C)(i)(II), for having been ordered removed and then reentering or attempting to reenter the United States without being admitted.[1]

Sarango appeared before an IJ and admitted her alienage, her adjustment to LPR status, her previous immigration history, and her recidivist violation, but she denied the fraud and inadmissibility charges. Sarango also submitted an application for adjustment of status based on her

---

[1] The original NTA, filed on March 1, 2006, contained only the first two inadmissibility charges. DHS then added the third charge on October 12, 2006.

4

marriage to a United States citizen and an application for consent to reapply for admission into the United States.

On January 16, 2007, the IJ found Sarango inadmissible and removable as charged. Subsequently, on April 15, 2008, the IJ, relying on *In re Briones*, 24 I. & N. Dec. 355, 371 (B.I.A. 2007) (holding that "aliens who are inadmissible under [§ 1182(a)(9)(C)(i)(I)] cannot qualify for section 245(i) [8 U.S.C. § 1255] adjustment, absent a waiver of inadmissibility"), denied Sarango's 8 U.S.C. § 1255 application for adjustment of status. The IJ determined that, under *Briones*, Sarango's inadmissibility under § 1182(a)(9)(C)(i)(II) rendered her statutorily ineligible for adjustment of status. The IJ ordered Sarango removed to Ecuador.

Sarango appealed the IJ's denial of her adjustment of status application to the Board of Immigration Appeals ("BIA"). Before the BIA, Sarango argued that she was eligible for retroactive – "*nunc pro tunc*"[2] – consent to reapply for admission pursuant to § 1182(a)(9)(C)(ii), and that a grant of such relief would waive her inadmissibility. The BIA dismissed Sarango's petition, first determining that Sarango was removable pursuant to § 1227(a)(1)(A) due to

---

[2] The Latin phrase "*nunc pro tunc*" means "now for then" and "permits acts to be done after the time they should have been done with a retroactive effect." *Barden v. Keohane*, 921 F.2d 476, 478 n.2 (3d Cir. 1990). *Black's Law Dictionary* defines "*nunc pro tunc*" as "[h]aving retroactive legal effect through a court's inherent power." 1174 (9th ed. 2009).

her inadmissibility under § 1182(a)(9)(C)(i)(II).[3] Next, responding to Sarango's retroactive consent argument, the BIA determined that the IJ lacked jurisdiction to decide requests for consent to reapply for admission. The BIA relied on the text of § 1182(a)(9)(C)(ii), which vests authority to consider requests for consent to reapply for admission with the Secretary of Homeland Security. Because the authority of the BIA and immigration courts is circumscribed by the authority of the Attorney General, the BIA reasoned that the IJ lacked jurisdiction to consider Sarango's request. Finally, the BIA declined to remand or stay Sarango's proceeding while Sarango applied to the Secretary of Homeland Security for consent to reapply because Sarango failed to allege a *prima facie* case for relief. The BIA issued a final order of removal on May 20, 2010, and Sarango petitioned this Court for review on June 10, 2010.

## II.

We have jurisdiction over a final order of removal pursuant to 8 U.S.C. § 1252(a)(1). Where, as here, the BIA issued an opinion, we review the BIA's decision as the final agency decision. *Espinosa-Cortez v. Att'y Gen. of the United States*, 607 F.3d 101, 106 (3d Cir. 2010). We review questions of law *de novo*. *Yusupov v. Att'y Gen. of the United*

---

[3] Because the BIA determined Sarango was removable pursuant to § 1227(a)(1)(A) due to her inadmissibility under § 1182(a)(9)(C)(i)(II), it declined to discuss the other alleged grounds for inadmissibility. A.R. at 4 n.2. We agree with the BIA's determination and need not address the other charged grounds of inadmissibility.

6

*States*, 518 F.3d 185, 197 (3d Cir. 2008). We owe deference to the BIA's reasonable, permissible interpretations of the Immigration and Nationality Act ("INA"). *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999); *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984); *Yusupov*, 518 F.3d at 197.

### III.

We first consider whether the BIA correctly concluded Sarango was inadmissible and removable. We then consider whether immigration judges have jurisdiction to consider requests for consent to reapply for admission pursuant to § 1182(a)(9)(C)(ii).

### A.

The BIA determined that Sarango was removable pursuant to § 1227(a)(1)(A). Removability was based on Sarango's inadmissibility as an "alien who . . . has been ordered removed under . . . any . . . provision of law . . . and who enters or attempts to reenter the United States without being admitted." 8 U.S.C. § 1182(a)(9)(C)(i)(II). In her immigration proceeding, Sarango admitted that she was ordered deported in 1995 and that she unlawfully reentered the United States in August 2000 without being admitted. Consequently, the BIA concluded that the IJ correctly found Sarango inadmissible and removable.

Sarango nevertheless argues that § 1182(a)(9)(C)(i)(II) does not apply to her because she had been ordered *deported* in 1995, not *removed*. This semantic argument is meritless. We have repeatedly held, in a variety of contexts, that the

7

terms "deportation" and "removal" are interchangeable. *See, e.g.*, *Khouzam v. Att'y Gen. of the United States*, 549 F.3d 235, 247 (3d Cir. 2008) ("[T]his circuit and others have used the terms 'deportation' and 'deportable' interchangeably with the terms 'removal' and 'removable.'"); *Kolkevich v. Att'y Gen of the United States*, 501 F.3d 323, 326 n.2 (3d Cir. 2007) ("We use the terms 'final order of removal' and 'deportation order' interchangeably."); *Avila-Macias v. Ashcroft*, 328 F.3d 108, 111 (3d Cir. 2003) ("[A] reference to an order of removal would encompass an order of deportation."). We apply the terms "deportation" and "removal" interchangeably here, as well. Therefore, we reject Sarango's argument and agree with the BIA's determination that Sarango is removable under § 1227(a)(1)(A).

**B.**

We now turn to an issue of first impression: whether an IJ has jurisdiction to consider requests for consent to reapply for admission under § 1182(a)(9)(C)(ii).

The BIA concluded that the IJ lacked jurisdiction to consider Sarango's *nunc pro tunc* consent request under § 1182(a)(9)(C)(ii).[4] Rather than resolving Sarango's consent

---

[4]    8 U.S.C. § 1182(a)(9)(C)(ii) provides, in relevant part:

> Exception. Clause (i) shall not apply to an alien seeking admission more than 10 years after the date of the alien's last departure from the United States if, prior to the alien's reembarkation at a place outside the United States or attempt to be

8

request on the merits, the BIA raised the IJ's lack of jurisdiction *sua sponte* and rejected Sarango's consent request on this basis. To support its reasoning, the BIA focused on the statutory text and concluded that "authority to consent to an alien's reapplication for admission has been delegated to the Secretary of Homeland Security, not to the Attorney General." A.R. at 5.

Sarango argues that the BIA incorrectly concluded that the IJ lacked jurisdiction to consider her consent request under § 1182(a)(9)(C)(ii). In support of her argument, Sarango notes that, in general, an IJ has jurisdiction to consider status adjustment applications, including inadmissibility waivers. *See, e.g.*, 8 U.S.C. § 1255(i); 8 C.F.R. § 1240.11; 8 C.F.R. § 212.2. We reject Sarango's arguments because the plain language of § 1182(a)(9)(C)(ii) authorizes the Secretary of Homeland Security, rather than the Attorney General, to consider consent requests in these circumstances.

This issue implicates a legal matter, the statutory interpretation of § 1182(a)(9)(C)(ii).[5] We review *de novo* questions regarding the interpretation of the provisions of the Immigration and Nationality Act ("INA"), and we give

---

> readmitted from a foreign contiguous country, the Secretary of Homeland Security has consented to the alien's reapplying for admission.

[5]     8 U.S.C. § 1182(a)(9)(C)(ii) is a provision of the Immigration and Nationality Act, § 212(a)(9)(C)(ii).

"appropriate deference [to] the BIA's reasonable interpretations of statutes it is charged with administering."[6] *De Leon-Ochoa v. Att'y Gen. of the United States*, 622 F.3d 341, 348 (3d Cir. 2010); *see Aguirre-Aguirre*, 526 U.S. at 424-25; *Yusupov*, 518 F.3d at 197-98. We review the BIA's decision interpreting the INA under the *Chevron* two-step inquiry:

> If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue . . . the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron,* 467 U.S. at 842-43. We now apply these principles to § 1182(a)(9)(C)(ii).

Our review of § 1182(a)(9)(C)(ii) leads us to conclude that Congress clearly intended to vest authority to consider requests for consent to reapply for admission with the

---

[6] Determining what constitutes "appropriate" deference to unpublished, non-precedential, single-member BIA decisions is an open question. *De Leon-Ochoa*, 622 F.3d at 350-51. Here, as in *De Leon-Ochoa*, because the issue of appropriate deference is not dispositive, we decline to resolve this question. *See id*. at 351.

10

Secretary of Homeland Security.[7]  Plain, unambiguous language compels this result.  The statutory provision at issue functions as an exception to 8 U.S.C. §§ 1182(a)(9)(C)(i)(I) and (II) and permits an inadmissible alien to ask the Secretary of Homeland Security for consent to reapply for admission after waiting ten years.  The statute makes abundantly clear that the Secretary of Homeland Security – not the Attorney General – has the authority to consider consent to reapply requests.  The statute reads: "Exception.  Clause [8 U.S.C. § 1182(a)(9)(C)(i)] shall not apply to an alien seeking admission . . . if . . . *the Secretary of Homeland Security* has consented to the alien's reapplying for admission."  8 U.S.C. § 1182(a)(9)(C)(ii) (emphasis added).

The requirement that an alien seek consent from the Secretary of Homeland Security is the result of a recent statutory amendment.  *See* Violence Against Women and Department of Justice Reauthorization Act – Technical Corrections, Pub. L. No. 109-271, *sec*. 6, § 1182, 120 Stat. 750, 762 (2006).  Prior to the 2006 amendment, the statute read:

> Exception
> Clause [8 U.S.C. § 1182(a)(9)(C)(i)] shall not apply to an alien seeking admission more than 10 years after the date of the alien's last departure from the United States if, prior to the

---

[7]  Because the plain language of the statute makes Congress's intent clear, we need not reach the second step of the *Chevron* analysis.  Nevertheless, if we were to engage in a *Chevron* step two analysis, we think the BIA's interpretation of the statute is permissible and reasonable.

11

alien's reembarkation at a place outside the United States or attempt to be readmitted from a contiguous territory, *the Attorney General has consented to the alien's reapplying for admission. The Attorney General in the Attorney General's discretion may waive the provisions of subsection (a)(9)(C)(i) in the case of an alien whom the Attorney General has granted classification under clause (iii), (iv), or (v) of section 1154(a)(1)(A) of this title, or classification under clause (ii), (iii), or (iv) of section 1154(a)(1)(B) of this title, in any case in which there is a connection between –*

> *(1) the alien's having been battered or subjected to extreme cruelty; and*
> *(2) the alien's –*
>> *(A) removal;*
>> *(B) departure from the United States;*
>> *(C) reentry or reentries into the United States; or*
>> *(D) attempted reentry into the United States.*

8 U.S.C. § 1182(a)(9)(C)(ii) (2005) (emphasis added). The 2006 amendment then deleted the italicized text above, *i.e.*, "'the Attorney General has consented' and all that follows through 'United States.'" 120 Stat. at 762. Subsequently, the 2006 amendment replaced the stricken text with "'the Secretary of Homeland Security has consented to the alien's

12

reapplying for admission.'" *Id*.[8] The clear textual changes brought about by this amendment indicate Congress's intent to divest the Attorney General of authority to consider consent requests and to endow the Secretary of Homeland Security with this authority.

Because the Secretary of Homeland Security (rather than the Attorney General) now has the exclusive authority to decide consent to reapply requests, the BIA and immigration courts necessarily lack the authority to consider these requests. The BIA and immigration courts are agencies operating under the authority of the Attorney General, and these immigration agencies have authority (deriving from statute and regulations) circumscribed by that of the Attorney General. *See, e.g.*, 8 U.S.C. § 1101(b)(4) ("The term 'immigration judge' means an attorney whom the Attorney General appoints . . . . An immigration judge shall be subject to such supervision and shall perform such duties as the Attorney General shall prescribe . . . ."); 8 C.F.R. § 1003.1(a)(1) ("There shall be in the Department of Justice a Board of Immigration Appeals . . . . Board members shall be attorneys appointed by the Attorney General to act as the Attorney General's delegates . . . ."); 8 C.F.R. § 1003.1(d)(1); 8 C.F.R. § 1003.10(b). Because the Attorney General no longer has authority to consider consent to reapply requests, neither do the BIA or immigration courts.

---

[8] The 2006 amendment also added a new provision, 8 U.S.C. § 1182(a)(9)(C)(iii), which applies to self-petitioners under the Violence Against Women Act. 750 Stat. at 762. Sarango's argument does not implicate this provision.

Finally, we note that the BIA previously has recognized that Congress can – and has – limited the jurisdiction of the immigration agencies by delegating decision-making authority to other federal departments. For example, in *In re Ruiz-Massieu*, the BIA held that immigration judges could not exercise *de novo* review over the Secretary of State's finding. 22 I. & N. Dec. 833, 842 (B.I.A. 1999) ("We conclude that Congress' decision to require a specific determination by the Secretary of State, based on foreign policy interests, to establish deportability . . . coupled with division of authority . . . between the Attorney General and the Secretary of State, make it clear that the Secretary of State's reasonable determination in this case should be treated as conclusive evidence of the respondent's deportability."); *see also Matter of Anttalainen*, 13 I. & N. Dec. 349, 350 (B.I.A. 1969) (concluding that BIA lacked authority to review the Secretary of Labor's denial of a labor certification because "[t]he law . . . makes the issuance of a labor certification a matter solely for the consideration of the Department of Labor."). Here, similarly, Congress passed a law making consideration of § 1182(a)(9)(C)(ii) consent to reapply requests the exclusive province of the Secretary of the Homeland Security. Neither this Court nor the BIA has the power to contravene this explicit congressional directive.

Nevertheless, Sarango insists that two provisions, 8 U.S.C. § 1255(i) and 8 C.F.R. § 212.2(e), still give the immigration court jurisdiction to consider her consent request. We disagree.

First, Sarango contends that § 1255(i) gives the IJ jurisdiction because an alien "[m]ay apply to the Attorney General for the adjustment of his or her status to that of an

14

alien lawfully admitted for permanent residence." 8 U.S.C. § 1255(i)(1). To bolster her argument, Sarango relies on 8 C.F.R. § 1240.11, which permits an IJ to consider an application for waiver of inadmissibility in connection with an application for adjustment of status. However, nothing in these general provisions conflicts with our reading of § 1182(a)(9)(C)(ii). The plain text of § 1182(a)(9)(C)(ii) makes clear that the Secretary of Homeland Security – not the Attorney General – has authority to consider requests for consent to reapply. In the *specific context* of recidivist violators of the immigration laws who are inadmissible under § 1182(a)(9)(C), Congress has carved out an exception to § 1255's general grant of jurisdiction to the Attorney General to consider status adjustment applications.

Likewise unavailing is Sarango's reliance on 8 C.F.R. § 212.2(e).[9] Sarango reads this regulation to give an IJ

---

[9]    8 C.F.R. § 212.2(e) provides:

> Applicant for adjustment of status. An applicant for adjustment of status under section 245 of the Act [8 U.S.C. § 1255] and part 245 of this chapter must request permission to reapply for entry in conjunction with his or her application for adjustment of status. This request is made by filing Form I-212, Application for Permission to Reapply. If the application under section 245 of the Act has been initiated, renewed, or is pending in a proceeding before an immigration judge, the district director must refer the

15

jurisdiction to consider her consent request. Sarango over-reads this regulation, and her interpretation is contrary to the BIA's decision in *In re Torres-Garcia*, 23 I. & N. Dec. 866 (B.I.A. 2006). Primarily, this regulation requires, as a threshold matter, that an applicant apply under 8 U.S.C. § 1255 for adjustment of status. 8 C.F.R. § 212.2(e). But Sarango is statutorily ineligible for adjustment of status under § 1255 because she is not "admissible to the United States for permanent residence." 8 U.S.C. § 1255(i)(2)(A); *see In re Briones*, 24 I. & N. Dec. at 371. Consequently, Sarango falls outside the scope of 8 C.F.R. § 212.2(e).

Moreover, the BIA held in *In re Torres-Garcia* that an alien who is inadmissible pursuant to § 1182(a)(9)(C)(i)(II) cannot seek retroactive permission to reapply for admission under 8 C.F.R. §§ 212.2(e) and (i)(2). 23 I. & N. Dec. at 874-75 ("[T]he very concept of *retroactive* permission to reapply for admission, i.e., permission requested after unlawful reentry, contradicts the clear language of section 212(a)(9)(C) . . . ."). We see no reason to depart from the BIA's *Torres-Garcia* decision interpreting this clear statute. Indeed, multiple Circuit Courts of Appeals have followed *Torres-Garcia* and held that an alien who is inadmissible under § 1182(a)(9)(C)(i)(II) is not eligible for retroactive consent to reapply for admission under 8 C.F.R. § 212.2 and, consequently, cannot adjust status pursuant to § 1255(i). *See Gonzalez-Balderas v. Holder*, 597 F.3d 869, 870 (7th Cir. 2010) ("[A]n application for retroactive relief . . . cannot be granted when the effect would be to lift the ten-year bar."); *Delgado v. Mukasey*, 516 F.3d 65, 72 (2d Cir. 2008) ("The

Form I-212 to the immigration judge for adjudication.

16

BIA has expressly held, however, that 8 C.F.R. § 212.2 does not operate as a waiver of inadmissibility under 8 U.S.C. § 1182(a)(9) . . . ."); *Gonzales v. DHS*, 508 F.3d 1227, 1242 (9th Cir. 2007) ("[A]n applicant who is inadmissible under subsection (a)(9)(C)(i)(II) is also ineligible to adjust his status under the special adjustment provision from within the United States. The alien is bound by subsection (a)(9)(C)(ii) . . . ."); *see also In re Briones*, 24 I. & N. Dec. at 371 ("[A]liens who are inadmissible under section 212(a)(9)(C)(i)(I) of the Act cannot qualify for section 245(i) adjustment, absent a waiver of inadmissibility."). We also will adhere to the statute's plain language. Nothing in 8 C.F.R. § 212.2 confers jurisdiction on an IJ to consider Sarango's consent request in direct contravention of the plain text of § 1182(a)(9)(C)(ii). Consequently, Sarango is incorrect that this regulation preserved the IJ's jurisdiction to consider her retroactive consent request.

In sum, the BIA correctly concluded that the IJ lacked jurisdiction to consider Sarango's "*nunc pro tunc*" request for consent to reapply for admission pursuant to § 1182(a)(9)(C)(ii).[10]

---

[10] Rather than stay or remand Sarango's petition while she applied for consent to reapply for admission from the Secretary of Homeland Security, the BIA dismissed Sarango's petition outright because it determined Sarango could not demonstrate *prima facie* eligibility for a § 1182(a)(9)(C)(ii) inadmissibility waiver. We agree with the BIA's disposition. The § 1182(a)(9)(C)(ii) exception provision explicitly requires that an alien wait *ten years* from the prior removal date before seeking consent to reapply. But Sarango departed the United States in February 1999 and reentered after just one year in

17

IV.

For the foregoing reasons, we deny Sarango's Petition for Review.

---

August 2000. Therefore, even if 8 C.F.R. § 212.2(i) permitted Sarango to apply for *nunc pro tunc* relief, she did not satisfy the ten-year wait-to-reenter requirement. Accordingly, we will deny her petition.