NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3866
_____

ANA RUTH DUENAS-DECERRITOS;
KEYSI DAYANA CERRITOS-DUENAS;
Petitioners

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board Nos. A206-730-262 & A206-730-263)
Immigration Judge: Leo A. Finston
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 12, 2017

Before:  RESTREPO, GREENBERG and FISHER, *Circuit Judges*.

(Filed: March 9, 2018)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FISHER, *Circuit Judge*.

Petitioner Ana Ruth Duenas de Cerritos and her minor daughter, Keysi Dayana Cerritos Duenas, seek review of a final decision issued by the Board of Immigration Appeals (BIA). The BIA upheld the Immigration Judge's denial of Petitioner's application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT). We will deny the petition.

I.

Petitioner and her daughter are natives and citizens of El Salvador. They entered the United States, without inspection, in May of 2014 (supposedly to join Petitioner's husband who had been in the United States, without legal status, for several years). The Department of Homeland Security commenced removal proceedings, charging Petitioner and her daughter with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i). After admitting all factual allegations and conceding removability, Petitioner filed an application for asylum, withholding of removal, and protection under the CAT.

Prior to her hearing, Petitioner submitted a signed, written declaration in which she explained that she was afraid to return to El Salvador because she had been "threatened by [the Mara 18 gang] and specifically by an individual named Giovanni who associated . . . with the Maras."[1] According to the declaration, Giovanni used to transport Petitioner to town to purchase groceries. But after Giovanni made several unwanted

---

[1] Administrative Record (A.R.) 277.

2

sexual advances and harassing phone calls to Petitioner, she discarded and replaced her phone's chip—thereby changing her phone number. Giovanni then threatened Petitioner and her daughter, stating that he would kill them if she contacted the police. Shortly after this incident, Petitioner started receiving extortionate phone calls, supposedly from the Maras, demanding $3,000 in exchange for her safety. She believed the extortionate calls were linked to Giovanni because "he told [Petitioner] that he had connections with the Maras."[2] After several calls from the Maras, she escaped to her sister's village, and later entered the United States.

At Petitioner's hearing before the Immigration Judge (IJ), however, her testimony deviated from her written declaration in several respects. Some inconsistencies were minor, such as dates that did not match those in her declaration or in a police report she submitted to Salvadoran authorities. Other discrepancies were more significant and related to key facts. For example, although Petitioner wrote that Giovanni phoned her repeatedly and that she discarded the chip in her phone as a result, she testified before the IJ that Giovanni never phoned her and that she instead discarded the phone chip due to the extortionate phone calls by the Maras. Additionally, in contrast to her written testimony, Petitioner testified before the IJ that Giovanni never transported her to town. The IJ repeatedly provided Petitioner opportunities to explain the discrepancies, noting that "the controlling case law requires [him] to give [Petitioner] an opportunity to explain

_____

[2] A.R. 277.

3

these types of discrepancies."[3] Petitioner, however, failed to provide any meaningful explanation; in several instances, she merely stated she was confused or nervous and failed to provide additional explanation.

Ultimately, the IJ determined that Petitioner was not a credible witness "due to the numerous inconsistencies and omissions contained in her testimony and between her testimony and the written record."[4] According to the IJ, Petitioner "had no explanation for why her testimony changed or why it differed from the written record in the first place."[5] In addition to the adverse credibility determination, the IJ found that Petitioner's case was not adequately corroborated. Specifically, although numerous letters and affidavits were submitted in support of Petitioner, the letters were "vague," they failed to "discuss the specific details of [Petitioner's] alleged problems in El Salvador," and they "lack[ed] any foundation."[6] Accordingly, the IJ determined these letters had "basically no probative value whatsoever."[7] Moreover, the IJ highlighted that Petitioner's sister, who was "the one witness who might corroborate [Petitioner's] story" (because she took Petitioner in during the period of the alleged threats),[8] did not submit a letter. The IJ considered this, too, in concluding that Petitioner's claim was not adequately corroborated.

---

[3] A.R. 183.
[4] A.R. 77.
[5] A.R. 78.
[6] A.R. 78.
[7] A.R. 78.
[8] A.R. 79.

The IJ further determined that "[e]ven if the Court believed [Petitioner's] testimony," her proposed particular social group—"female targets of sexual assault who have a family member in the United States and are perceived as having wealth"—was not cognizable because it was not a "distinct social group," and because it lacked "particularity in that the group is shifting and amorphous."[9] Lastly, the IJ determined that the CAT claim was meritless because there was "no indication at all that a public official or person acting in an official capacity has the specific intent for the respondent to be tortured."[10]

Petitioner appealed to the BIA, which agreed with the IJ's reasoning and upheld the decision. Regarding the adverse credibility determination, the BIA noted the various discrepancies in the record—including date discrepancies, conflicting testimony regarding Giovanni, and conflicting testimony regarding the phone calls and the discarding of the phone chip. Accordingly, the BIA upheld the credibility determination because it was "based upon discrepancies present in the record."[11] Moreover, the BIA agreed with the IJ that the proposed particular social group was not cognizable because it lacked "particularity and social distinction" and was "circularly defined."[12] Lastly, the BIA upheld the IJ's determination regarding Petitioner's CAT claim. Petitioner filed a timely petition for review in this Court.

---

[9] A.R. 79.
[10] A.R. 80.
[11] A.R. 3.
[12] A.R. 4.

5

II.

The BIA had appellate jurisdiction over the IJ's decision, and we have jurisdiction to review the BIA's final order.[13] "When the BIA issues its own opinion, we generally review that decision as the final agency decision."[14] "Here, however, the BIA's opinion 'invokes specific aspects of the IJ's analysis and fact-finding in support of [its] conclusions,' and so we are obliged to review both the decisions of the IJ and the BIA."[15] "We exercise *de novo* review over constitutional claims or questions of law and the application of law to facts."[16] We review findings of fact, in comparison, under the deferential "substantial evidence" standard, under which such findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."[17]

III.

Petitioner argues that: (A) the BIA erred in upholding the IJ's adverse credibility determination; (B) the IJ violated her due process rights by failing to act as an independent arbiter; and (C) the BIA erred in upholding the IJ's rejection of her proposed particular social group. We address these arguments in turn.

A.

---

[13] 8 C.F.R. § 1003.1(b)(3); 8 U.S.C. § 1252(a)(1).

[14] *Green v. Att'y Gen.*, 694 F.3d 503, 506 (3d Cir. 2012) (citing *Sarango v. Att'y Gen.*, 651 F.3d 380, 383 (3d Cir. 2011)).

[15] *Id.* (alteration in original) (quoting *Voci v. Gonzales*, 409 F.3d 607, 613 (3d Cir. 2005)).

[16] *Garcia v. Att'y Gen.*, 665 F.3d 496, 502 (3d Cir. 2011) (quoting *Yusupov v. Att'y Gen.*, 518 F.3d 185, 197 (3d Cir. 2008)), *as amended* (Jan. 13, 2012).

[17] *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

Petitioner first argues that the BIA erred in upholding the IJ's adverse credibility determination, suggesting that the determination was "not based on specific, cogent reasons, but [was] instead based upon speculation and conjecture."[18] "Adverse credibility determinations are factual findings" that we review under the deferential substantial evidence standard.[19] Because the adverse credibility determinations here were properly "based on inconsistent statements, contradictory evidence, and inherently improbable testimony,"[20] Petitioner's argument fails.

If the minor date discrepancies were the only discrepancies at issue, the IJ's adverse credibility determination might have been in error. However, the IJ also relied on the more significant discrepancies discussed above: whether Giovanni phoned Petitioner repeatedly and she discarded the chip in her phone as a result, or whether Giovanni never phoned her she and she instead discarded the phone chip due to extortionate phone calls by the Maras—and whether Giovanni ever transported her into town to buy groceries.

Petitioner further argues that the adverse credibility determination was unfair because, *inter alia*, she has little schooling and the "IJ engaged in leading and confusing questioning."[21] To the extent that the IJ engaged in limited leading questioning, the record does not reflect that such questioning precipitated Petitioner's contradictory

---

[18] Pet'r Br. 10.

[19] *Zheng v. Gonzales*, 417 F.3d 379, 381 (3d Cir. 2005)).

[20] *Ordonez–Tevalan v. Att'y Gen.*, 837 F.3d 331, 341 (3d Cir. 2016) (quoting *Toure v. Att'y Gen.*, 443 F.3d 310, 325 (3d Cir. 2006)).

[21] Pet'r Br. 11.

7

testimony. Rather, the IJ's questioning was *in response to* Petitioner's contradictory testimony and directed towards clarifying the record. Indeed, the IJ repeatedly afforded Petitioner opportunities to explain the discrepancies, once even allowing her to restart a line of testimony due to an apparent contradiction. Ultimately, this is not a case where an "adverse credibility determination was . . . based . . . upon speculation and conjecture,"[22] but rather on substantial evidence in the record. Accordingly, Petitioner's claim fails.

B.

Petitioner now argues that the IJ violated her due process rights "by abdicating his duty to act as an independent arbiter by interjecting himself into the proceedings by becoming an advocate against the Petitioner."[23] "Aliens are 'entitled to a full and fair hearing of [their] claims and a reasonable opportunity to present evidence,'"[24] and we exercise *de novo* review over such allegations.[25] To prevail on a due process claim like the one Petitioner advances here, an alien must show "substantial prejudice."[26]

At the outset, we note that the record reflects scant evidence of prejudice, let alone substantial prejudice. Even assuming that Petitioner's argument had merit, however, such a claim "remains subject to administrative exhaustion requirements [in 8 U.S.C. §

---

[22] *Sukwanputra v. Gonzales*, 434 F.3d 627, 637 (3d Cir. 2006) (internal citation omitted) (remanding for reconsideration of credibility determination when adverse credibility determination was based on "speculation and conjecture").

[23] Pet'r Br. 17.

[24] *Singh*, 432 F.3d at 541 (alteration in original) (quoting *Chong*, 264 F.3d at 386).

[25] *Abdulrahman v. Ashcroft*, 330 F.3d 587, 595–96 (3d Cir. 2003).

[26] *Singh*, 432 F.3d at 541 (citing *Bonhometre v. Gonzales*, 414 F.3d 442, 448 (3d Cir. 2005)).

1252(d)(1)] mandating that the issue be raised before the board."[27] Here, Petitioner never raised her due process claim before the BIA. Accordingly, her failure to exhaust this claim before the agency "deprives us of jurisdiction to consider" it.[28]

## C.

Petitioner's remaining argument is that the BIA erred in "upholding the IJ's finding that . . . Petitioner's proposed social group lacked particularity and social distinction and that she failed to establish a nexus to said ground."[29] As explained *supra*, however, 8 U.S.C. § 1252(d)(1) requires administrative exhaustion.[30] A particular social group definition, like any other argument, should first be raised before the BIA. On appeal, however, Petitioner advances a new particular social group definition that she did not raise before the agency; therefore, we lack jurisdiction to consider it.[31]

Before the IJ, Petitioner alleged membership in a particular social group defined as "someone who has been targeted for sexual assault who ha[s] close family members in

---

[27] *Abdulrahman*, 330 F.3d at 595 n.5; *see also Castro v. Att'y Gen.*, 671 F.3d 356, 365 (3d Cir. 2012) ("A petitioner's failure to exhaust an issue by presenting it to the BIA deprives us of jurisdiction to consider that issue."); *Bonhometre*, 414 F.3d at 448 (concluding that petitioner's failure to argue his due process claim before the BIA was "fatal to our jurisdiction over [his] petition").

[28] *See Castro*, 671 F.3d at 365.

[29] Pet'r Br. 20.

[30] *See Castro*, 671 F.3d at 365.

[31] *See Ramirez v. Att'y Gen.*, 603 F. App'x 108, 113 (3d Cir. 2015) (citing *Lin v. Att'y Gen.*, 543 F.3d 114, 120–21 (3d Cir. 2008)) (court lacked jurisdiction to consider particular social group not presented "during the immigration proceedings or on appeal to the BIA"); *see also Hernandez-De La Cruz v. Lynch*, 819 F.3d 784, 786 (5th Cir. 2016) (same); *Kanagu v. Holder*, 781 F.3d 912, 917 (8th Cir. 2015) (same).

the United States," and is "perceived to have wealth."[32] Before the BIA, she properly raised the same particular social group: "female targets of sexual assault that have a family member in the United States and are perceived as having wealth."[33] Before this Court, however, she advances a new theory: "that [she is] a family member to her husband who resides in the United States."[34] Petitioner seemingly argues that we should overlook the exhaustion requirement here because "[f]ormations and enunciations of a particular social group is at best an intellectual exercise and at worse an exercise in futility."[35] But Petitioner perhaps overlooks that we do not apply the exhaustion requirement in "draconian fashion."[36] Rather, we implement a "liberal exhaustion policy,"[37] and "so long as an immigration petitioner makes some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal, a petitioner is deemed to have exhausted her administrative remedies."[38] Here, Petitioner has failed to make such any such effort. Accordingly, Petitioner's failure to present some version of this new theory before the agency "deprives us of jurisdiction to consider" it.[39]

---

[32] A.R. 187.

[33] A.R. 3.

[34] Pet'r Br. 24.

[35] Pet'r Br. 24.

[36] *Lin*, 543 F.3d at 121.

[37] *Joseph v. Attorney Gen. of U.S.*, 465 F.3d 123, 126 (3d Cir. 2006), *as amended* (Nov. 27, 2006).

[38] *Lin*, 543 F.3d at 121 (quoting *Joseph*, 465 F.3d at 126).

[39] *Castro*, 671 F.3d at 365.

## IV.

For the reasons set forth above, we will deny the petition.