NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3798
_____

DANILO ANTONIO PINEDA-GONZALEZ,
AKA Danilo P. Gonzalez, AKA. Danilo Pineda,
AKA Danilo Gonzalez-Pineda, AKA Donila Pineda-Gonzalez,
                                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                                                    Respondent
_____

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS
(Agency No. A216-430-404)
Immigration Judge: Kyung Auh
_____

Submitted under Third Circuit L.A.R. 34.1(a)
July 1, 2020
_____

Before: GREENAWAY, JR., SHWARTZ, and RENDELL, Circuit Judges.

(Filed: July 21, 2020)
_____

OPINION*
_____

_____

    * This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

SHWARTZ, Circuit Judge.

Danilo Antonio Pineda-Gonzalez petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming the decision of the Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons set forth below, we will dismiss his petition in part and deny it in part.

I

Pineda-Gonzalez, a native and citizen of El Salvador, entered the United States in 2011 without inspection. Following a conviction for driving while intoxicated in 2018, Pineda-Gonzalez was issued a Notice to Appear ("NTA") and placed in removal proceedings.[1] At the hearing, he sought asylum, withholding of removal, and CAT relief.

Pineda-Gonzalez claimed that he was persecuted because he belongs to two particular social groups ("PSG") and for his political opinion. Specifically, he asserted that he is a member of the following PSGs: (a) persons "targeted by the gangs–and in particular, the MS-13 and the 18, for refusing to join and actively opposing joining the gangs" and (b) "the Pineda family—as the only male . . . member." AR 283. He also argued that his resistance to the gangs was a political opinion.

---

[1] Pineda-Gonzalez argues, citing Pereira v. Sessions, 138 S. Ct. 2105 (2018), that his NTA was defective because it did not include the date and time of the hearing and, as a result, the IJ lacked jurisdiction. He, however, correctly concedes that this argument is foreclosed by Nkomo v. Att'y Gen., 930 F.3d 129 (3d Cir. 2019).

In support of his request, Pineda-Gonzalez submitted documents about the presence of gangs in El Salvador and the government's efforts to control them.[2] He and his sister also testified.

Pineda-Gonzalez testified that he lived in an area controlled by MS-13, and gang members threatened him when he refused their recruitment attempts. He also explained that a rival gang controlled the town where his girlfriend lived. He said that the rival gang also attempted to recruit him, but that his problems with that gang arose because a gang member wanted to date his girlfriend.

Pineda-Gonzalez believed that MS-13 feared that he was giving the rival gang information about MS-13 and, as a result, the gang threatened him and told him to stop seeing his girlfriend. While both gangs threatened him, neither physically harmed him. Nevertheless, he feared for his life.

Pineda-Gonzalez testified that after he left El Salvador, two of his nephews were jailed because of their gang activity and he believes that his family is at a heightened risk of being targeted by gangs. Pineda-Gonzalez explained that if he returned to El Salvador, he would be targeted by the gang because he is the only remaining male member of his extended family. He conceded that he had not experienced threats based on his family's involvement in the gang, but asserted that the gangs maintain control in El Salvador and that the police and the government will not help.

---

[2] He also submitted an affidavit from a psychologist.

3

Pineda-Gonzalez's sister corroborated Pineda-Gonzalez's testimony about their family's involvement with the gangs. In addition to confirming that two of his nephews were involved with MS-13 and incarcerated, she explained that one of their sisters, who remained in El Salvador, had been approached by a man she believed to be involved in the gang who asked whether Pineda-Gonzalez would be deported back to El Salvador. This led Pineda-Gonzalez's sister to believe he would be in danger if returned to El Salvador,[3] but she agreed that Pineda-Gonzalez had not received any recent threats from MS-13 and received no threats related to their nephews' gang involvement.

The IJ found Pineda-Gonzalez credible and, despite his counsel's complaints about the interpreter, the translation of his testimony was accurate. The IJ determined that Pineda-Gonzalez's request for asylum was untimely and that he had not shown that any changed circumstances warranted an exception to the filing deadline.[4] The IJ also held that, even if timely, his asylum application lacked merit because: (1) the PSG of persons "who ha[ve] been targeted by MS-13 and MS-18 gangs for refusing to join and actively opposing" was not cognizable because it was overly broad, AR 38; (2) even if the PSG of "member of the Pineda family, as the only male member," was a cognizable

---

[3] She also noted that she and Pineda-Gonzalez were not aware of this event or their nephews' involvement with the gang until after he was detained.

[4] Among other things, the IJ observed that, at the hearing, Pineda-Gonzalez explained that he had applied for asylum when he learned about his nephews' gang involvement and incarceration and that this assertion was contradicted by his I-589 application, where he explained that he failed to timely file an asylum application because he feared his application would be denied and that he would be deported.

4

PSG, and his gang resistance constituted a political opinion, he showed no nexus between that group and that opinion and the threats he received. AR 39. The IJ further reasoned that because Pineda-Gonzalez could not meet the higher burden for asylum, he could not meet the lower burden to obtain withholding of removal.

The IJ also determined that Pineda-Gonzalez was not entitled to CAT relief because: (1) he presented no evidence that he had ever been harmed or threatened by the government of El Salvador; (2) he had not established that he would be "more likely than not" "subject to torture at the instigation, consent, or acquiescence of a public official," AR 43; and (3) while El Salvador was experiencing instability as a result of criminal activity and gang violence, it also was "taking steps to target corrupt elements within its government" and "combat gangs and gang violence" as evidenced by Pineda-Gonzalez's own testimony about the imprisonment of his nephews for gang activity, AR 44.

The BIA affirmed the IJ's decision and dismissed the appeal. The BIA agreed that the asylum petition was untimely and that Pineda-Gonzalez presented no extraordinary circumstances that would excuse the late filing.[5] The BIA also agreed that Pineda-Gonzalez "failed to carry his burden of proving past persecution, a reasonable likelihood of future persecution on a protected ground, or a clear probability that his life or freedom would be threatened on account of a protected ground if he were returned to El Salvador," and that he failed to "establish a sufficient nexus between the harm[] feared

---

[5] The BIA concluded it did not need to address the IJ's alternative merits-based ground for denying asylum.

5

and any cognizable particular social groups, his political opinion, or any other enumerated ground." AR 04-05. The BIA also found no error in the IJ's determination that he would not likely face torture if returned to El Salvador and thus was properly denied CAT relief.[6]

Finally, the BIA found Pineda-Gonzalez's due process arguments arising from his complaints about the interpreter "unavailing" because Pineda-Gonzalez's hearing was "fundamentally fair," the interpreter stood by her translation, and Pineda-Gonzalez did not identify any uncorrected errors. AR 05-06.

Pineda-Gonzalez petitions for review.[7]

---

[6] The BIA also held that remand was not necessary for Pineda-Gonzalez to reformulate his arguments about his membership in the family-based PSG in light of an intervening case, Matter of L-E-A-, 27 I. & N. Dec. 581 (A.G. 2019), or that the IJ needed to explicitly apply S.E.R.L. v. Att'y Gen., 894 F.3d 535, 540 (3d Cir. 2018), because Pineda-Gonzalez was "afforded full and fair consideration of his case in accordance with the applicable standards." AR 05.

[7] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3), and we have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). See Garcia v. Att'y Gen., 665 F.3d 496, 502 n.4 (3d Cir. 2011). We review legal determinations de novo and "accept factual findings if supported by substantial evidence." Sesay v. Att'y Gen., 787 F.3d 215, 220 (3d Cir. 2015). Under the "deferential" substantial evidence standard, id., "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001) ("[T]he BIA's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it.").

Where, as here, "the BIA issued its own opinion, and did not simply adopt the opinion of the IJ, we review . . . the BIA's decision as the final agency decision." Nelson v. Att'y Gen., 685 F.3d 318, 320-21 (3d Cir. 2012) (citing Sarango v. Att'y Gen., 651 F.3d 380, 383 (3d Cir. 2011)). "However, to the extent the BIA deferred to or adopted the IJ's reasoning, we also look to and consider the decision of the IJ on those points." Id. at 321 (citing Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006)).

II

Because Pineda-Gonzalez asserts that his right to due process was violated, and because that claim, if successful, could require us to order a new hearing, we first address Pineda-Gonzalez's due process claim.

Due process requires that those in removal proceedings receive "the opportunity to be heard at a meaningful time and in a meaningful manner." Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001) (citation omitted). Where a petitioner claims he was deprived of his due process right, "he must show (1) that he was prevented from reasonably presenting his case and (2) that substantial prejudice resulted." Fadiga v. Att'y Gen., 488 F.3d 142, 155 (3d Cir. 2007) (internal quotation marks and citation omitted); see also Khan v. Att'y Gen., 448 F.3d 226, 236 (3d Cir. 2006).

Pineda-Gonzalez identifies several aspects of his case that he argues violated his right to due process, the most significant of which is the alleged failure in translation.[8]

---

[8] Pineda-Gonzalez raises several other reasons why he believes his due process rights were violated, but none has merit. First, the fact that various IJs handled preliminary proceedings did not impact his ability to present all evidence to the IJ who considered the merits of his applications. Although certain submissions were temporarily missing, all documents were available when the IJ considered the merits of his requests for relief. Second, Pineda-Gonzalez did not identify any evidence that demonstrates that his gastro-intestinal problems prevented him from ultimately presenting his case, and the fact that one hearing was postponed due to this health issue did not impact the IJ's view of Pineda-Gonzalez, as reflected by his positive credibility finding. Finally, because the IJ assumed Pineda-Gonzalez's family constituted a PSG and denied him relief on nexus grounds, Pineda-Gonzalez was not prejudiced by the BIA's decision not to remand the case for him to reformulate his PSG family membership arguments based on Matter of L-E-A-, 27 I. & N. Dec. 581 (A.G. 2019).

7

He asserts that the interpreter inaccurately translated and confused the two gangs about which he testified. The IJ probed the errors and allowed his counsel to rephrase her questions and elicit responses. In addition, the IJ questioned the interpreter to ensure that the translations were accurate and the interpreter assured the IJ that the translations were correct. Pineda-Gonzalez points to no specific testimony that was mistranslated and proposes no alternative translations even though the proceedings were digitally recorded. Finally, even if there was confusion about the translation with respect to the two gangs, it resulted in no prejudice because his other testimony and written submissions demonstrated that, regardless of which gang he claims threatened him, he failed to show he was threatened based on a protected ground.[9] See, e.g., Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 340 (3d Cir. 2008) (explaining that "protected grounds" derive from the

---

[9] To the extent Pineda-Gonzalez argues that the interpreter's frustration with challenges to the accuracy of her translation, use of her cell phone, and tight schedule prejudiced him, nothing in the record supports this assertion. The interpreter's scheduling constraints did not prevent him from fully presenting his case. In fact, her scheduling issue only prevented the simultaneous translation of the IJ's oral decision, which his counsel waived.

following categories: race, religion, nationality, membership in a particular social group, or political opinion).

As a result, Pineda-Gonzalez has not shown that the translation of the proceeding deprived him of due process.

III

A

We now address Pineda-Gonzalez's challenge to the ruling that his request for asylum was time-barred. To the extent the ruling was based upon a factual determination, such as whether changed circumstances exist that support accepting an asylum application beyond the one-year deadline, we lack jurisdiction to review that ruling. 8 U.S.C. § 1158(a)(3); Jarbough v. Att'y Gen., 483 F.3d 184, 188-90 (3d Cir. 2007); Sukwanputra v. Gonzales, 434 F.3d 627, 633-35 (3d Cir. 2006). We have jurisdiction to consider constitutional claims and questions of law, but the only legal challenge he made was based upon due process and, for the reasons discussed above,

9

such a challenge lacks merit.[10]  Therefore, we will dismiss the petition to review the asylum ruling.

IV

We next address Pineda-Gonzalez's argument that the IJ and BIA erred in denying his application for withholding of removal.  This argument fails.  First, although the IJ found that his asylum application was untimely, it also considered, in the alternative, whether he was entitled to asylum and determined that he was not.  The IJ then concluded that because Pineda-Gonzalez did not carry his burden of proof for asylum relief, he would be unable to meet the burden of proof for withholding of removal.  As we have observed, if a petitioner cannot meet the lower standard for obtaining asylum, then he cannot meet the higher burden for obtaining withholding of removal.  Guo v. Ashcroft, 386 F.3d 556, 561 n.4 (3d Cir. 2004).

Second, substantial evidence supports the finding that Pineda-Gonzalez was not persecuted on account of his membership in the PSG[11] of "the Pineda family—as the only male . . . member."  AR 283.[12]  Even assuming that Pineda-Gonzalez's family

---

[10] Because the BIA affirmed the IJ's determination that the asylum application was untimely, it was not required to address the IJ's alternate ruling that Pineda-Gonzalez did not prove he was entitled to asylum.

[11] A protected PSG is "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question."  S.E.R.L., 894 F.3d at 540 (quoting In re M-E-V-G-, 26 I. & N. Dec. 227, 237 (B.I.A. 2014)).

[12] Pineda-Gonzalez also argued before the IJ and BIA that he was a member of the PSG of persons "who ha[v]e been targeted by the gangs–and in particular, the MS-13 and the 18, for refusing to join and actively opposing joining the gangs."  AR 283.  He does

10

qualified as a PSG, substantial evidence supports the IJ and BIA's conclusion that the motive for the harm Pineda-Gonzalez fears is not his membership in this group. See I.N.S. v. Elias-Zacarias, 502 U.S. 478, 483 (1992) (requiring that the persecutor's motive arise from the alien's protected trait). The record shows that Pineda-Gonzalez experienced recruitment by his local gang and came to the attention of a rival gang because of his romantic relationship. Therefore, substantial evidence supports the conclusion that the harm Pineda-Gonzalez fears was based on his personal relationship and on the gangs' recruitment goals, not his membership in a PSG. See Gonzalez-Posadas v. Att'y Gen., 781 F.3d 677, 685 (3d Cir. 2015) ("Conflicts of a personal nature and isolated criminal acts do not constitute persecution on account of a protected characteristic."); Ndayshimiye v. Att'y Gen., 557 F.3d 124, 129 (3d Cir. 2009) (holding that to satisfy this nexus requirement, an applicant must show that the protected ground is one central reason for the persecution).[13]

---

not make an argument based upon this PSG in his opening brief, therefore any challenge to the IJ and BIA's findings with respect to this group is waived. Khan v. Att'y Gen., 691 F.3d 488, 495 n.4 (3d Cir. 2012) (holding that a party waives an issue on appeal when the party omitted it from its opening brief).

[13] Pineda-Gonzalez also argues that he was persecuted based on his opposition to the gang, which he claims embodies a political opinion. Even assuming that gang opposition is a political opinion, the record shows that the gang targeted Pineda-Gonzalez because of his romantic relationship and one gang's perception that he was providing information to its rival gang. Thus, there was substantial evidence for the IJ's conclusion that the threats he received were not on account of his opposition to gangs. See Gonzalez-Posadas, 781 F.3d at 685.

V

Finally, we review the decision to deny Pineda-Gonzalez CAT relief. To qualify

for protection under the CAT, the "burden of proof is on the applicant . . . to establish that

it is more likely than not that he . . . would be tortured,"[14] Myrie v. Att'y Gen., 855 F.3d

509, 515 (3d Cir. 2017) (first omission in original) (quoting 8 C.F.R. § 1208.16(c)(2)),

"with the consent or acquiescence of a public official or person acting in an official

capacity," 8 C.F.R. § 208.18(a)(1),[15] "if removed to the proposed country of removal,"

Myrie, 855 F.3d at 515.

Pineda-Gonzalez is not entitled to CAT relief. First, the threats and intimidation

he experienced do not constitute "extreme[,] . . . cruel and inhuman treatment," 8 C.F.R.

§ 208.18(a)(2). Second, substantial evidence supports the IJ's conclusion that Pineda-

---

[14] The "likelihood of torture" factor poses two questions: "(1) what is likely to happen to the petitioner if removed; and (2) does what is likely to happen amount to the legal definition of torture?" Kaplun v. Att'y Gen., 602 F.3d 260, 271 (3d Cir. 2010). The first question is factual, id., and requires the IJ to review "the evidence and determine[] future events more likely than not to occur," Myrie, 855 F.3d at 516. Because Pineda-Gonzalez did not argue to the BIA that the IJ erred in not specifically reciting Myrie's two-step analysis, he failed to exhaust this argument and so we lack jurisdiction to consider it. See Bonhometre v. Gonzales, 414 F.3d 442, 447 (3d Cir. 2005) ("To exhaust a claim before the agency, an applicant must first raise the issue before the BIA or IJ, so as to give it the opportunity to resolve a controversy or correct its own errors before judicial intervention." (internal quotation marks and citation omitted)). In any event, the IJ and BIA applied Myrie principles.

[15] "For an act to constitute torture under the [CAT] . . . it must be: (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions." Myrie, 855 F.3d at 515 (quoting Auguste v. Ridge, 395 F.3d 123, 151 (3d Cir. 2005)).

12

Gonzalez did not show that he would suffer harm "by or at the instigation of or with the consent or acquiescence of a public official" if he returns to El Salvador. 8 C.F.R. § 208.18(a)(1). Although there is evidence of criminal unrest, violence, and corruption in El Salvador, there is also evidence that the Salvadoran government has undertaken efforts to control the gangs and successfully punish illicit gang activity. Indeed, Pineda-Gonzalez's own family members have been imprisoned for their involvement with gangs. Thus, the IJ and BIA correctly denied Pineda-Gonzalez CAT relief.

VI

For these reasons, we will dismiss the petition in part and deny it in part.